(No. 37176.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT J. BAKER, Plaintiff in Error.

*Opinion filed Nov. 30, 1962.—Rehearing denied Jan. 28, 1963.*

WILLIAM E. HALL, of Centralia, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The defendant, Robert J. Baker, was indicted in the circuit court of Marion County on a charge of murder. He pleaded guilty, and was sentenced by the court, after a hearing in mitigation, to the penitentiary for the term of 99 years.

The defendant now brings a writ of error contending that the trial court erred in allowing his counsel to withdraw a sanity petition previously filed by former counsel; that his appointed counsel was incompetent; and that counsel at the time of trial failed to produce all available evidence.

The facts as found in lengthy written confessions taken in Benton County, Washington, where defendant was apprehended, and later in Marion County, Illinois, where defendant was subsequently brought, which confessions were admitted in evidence, are that on December 22, 1956, defendant and his wife were travelling on Route No. 50 in East St. Louis, Illinois, where they picked up a hitch-hiker in a Marine uniform. Shortly after being picked up, the Marine hitch-hiker fell asleep, and defendant and his wife who had now driven into Marion County, Illinois, decided to rob him.

The defendant, while the Marine still slept, climbed into the back seat of the automobile, and shot the Marine with a model No. 94 Winchester 30-caliber rifle. There is at this point some immaterial discrepancy as to how soon after being shot, the Marine died, but medical testimony indicates that death was almost instantaneous. The defendant deposited the body of the Marine in some underbrush, and then proceeded in the same automobile eastward into Indiana. On December 26, 1956, the body of the Marine was discovered and the Marine was later identified as Larry M. Kirk of Petersburg, Indiana.

The record discloses that after being apprehended at Benton County, Washington, the defendant signed written confessions setting forth in detail, the killing of Marine Larry M. Kirk. Subsequent written confessions were also signed by defendant in Marion County, Illinois, the scene of the crime.

The trial judge initially appointed three counsel to defend the defendant. Defendant's initial counsel filed a petition requesting a determination of the sanity of Robert J. Baker. The defendant constantly opposed this petition; that he wished to plead guilty; that he could receive no co-operation in this request from counsel. The court after hearing defendant state that he was not able to co-operate with his counsel, permitted counsel to withdraw. The court

then appointed two new counsel to represent Robert J. Baker. The record indicates that defendant and new counsel were able to co-operate; that upon agreement of counsel for defendant and the State's Attorney, the court appointed Dr. Groves B. Smith, a physician and surgeon, specializing in nerves and mental diseases connected with the State Hospital for the Criminally Insane at Menard, Illinois, to examine the defendant; that Dr. Smith did examine defendant and filed a written report regarding his observations during the examination of defendant; and that the written report of Dr. Smith was made available to counsel for defendant as well as the State's Attorney.

The report of Dr. Smith found defendant to be a friendly, co-operative and intelligent person who nevertheless had exhibited by his conduct throughout his life a tendency to react in an impulsive irresponsible manner compared to conventional standards. Most importantly, the report of Dr. Smith stated that from a medical standpoint the defendant had a clear knowledge of the basic facts which led to his present difficulty with the law. When the written report of Dr. Smith was made known to defendant and his court-appointed attorneys, defendant elected through his attorneys in open court to make a motion to have the sanity petition, previously filed on his behalf by former court-appointed counsel, withdrawn. The court at length questioned defendant about his right to a sanity hearing based on the sanity petition previously filed on his behalf. The defendant informed the court that the filing of the sanity petition was not his idea and that he, the defendant, had from its initial filing opposed said petition. In fact, it was defendant's disagreement as to the filing of a sanity petition on his behalf that led to the dismissal of his prior counsel. In open court, defendant persisted in his request for a withdrawal of the sanity petition previously filed, and it was only after a thorough examination of the defendant by the court heretofore set forth, that the motion to with-

draw the sanity petition was granted, and Dr. Smith's report was made a part of the record in this case.

The defendant now contends that it was error for the trial court to take the defendant's word as to his sanity, and that it was the court's duty to impanel a jury to try the question of defendant's sanity raised by the petition previously filed on the defendant's behalf.

The trial, adjudication, or sentence of a person charged with a criminal offense, while insane, violates his constitutional rights and is also expressly prohibited by statute. (*People* v. *Robinson*, 22 Ill.2d 162; *People* v. *Bender*, 20 Ill.2d 45; Ill. Rev. Stat. 1961, chap. 38, par. 593). We have thus held that if, before or during trial, facts are brought to the attention of the court, either from its own observations or by suggestion of counsel, which raise a *bona fide* doubt as to a defendant's present sanity, it becomes the duty of the court to impanel a jury to determine whether the accused is capable of understanding the charges against him and of co-operating with his counsel. *People* v. *Burson*, 11 Ill.2d 360.

The key to requiring a sanity trial is the existence of a *bona fide* doubt as to the defendant's present sanity. The trial court, therefore, has discretion in determining whether the facts of a particular case warrant a sanity hearing.

A recent enunciation by this court of the discretion of a trial court in this matter is found in *Brown* v. *People*, 8 Ill.2d 540, wherein this court said, at page 545: "The question before us is whether the denial of a hearing to determine the sanity of an accused at the time of the trial also violates due process of law. It is true as a general rule that it lies within the discretion of the trial court whether the issue of insanity should be first tried before the defendant is placed on trial."

The defendant in his brief relies upon *People* v. *Maynard*, 347 Ill. 422; *Brown* v. *People*, 8 Ill.2d 540; and

*People* v. *Burson,* 11 Ill.2d 360, to sustain his position that a sanity hearing should have been ordered by the trial judge.

In *People* v. *Maynard,* 347 Ill. 422, no sanity hearing was ordered by the trial court, despite the fact that plaintiff in error had been adjudged insane. This court in reversing the trial court stated that the general rule is that where insanity is proved as existing at a particular time it will be presumed to continue until disproved.

In *Brown* v. *People,* 8 Ill.2d 540, the only inquiry made by the trial judge when the defendant's counsel moved for a sanity hearing was to ask of the defendant, at page 545: " 'You are not crazy at this time, are you? Do you hear me?,' to which the defendant replied: 'I don't know.' The judge then stated: 'I don't think he is crazy at all.' " This court, in reversing the trial court, held that the decision of the trial judge, based to a certain extent upon the defendant's statement that he did not know whether he was crazy and without any evidence or argument, was arbitrary, and not the type of inquiry contemplated by either the common law or the statute.

In *People* v. *Burson,* 11 Ill.2d 360, the conduct of the defendant during his two-week trial, wherein he persisted in arguing with his counsel, the State's attorney, and the court, in the presence of the jury, and his rambling dissertations to the jury during a trial which he insisted on conducting in part, led to *bona fide* doubts as to defendant's sanity, and therefore necessitated a reversal by this court for the failure of the trial court to provide for a sanity hearing.

In the present case, there is no prior adjudication of insanity as in *People* v. *Maynard,* 347 Ill. 422; there is no inability of defendant to co-operate with counsel at the time of trial, nor the irrational behavior exhibited by the defendant in *People* v. *Burson,* 11 Ill.2d 360; and, unlike

*Brown v. People,* 8 Ill.2d 540, there was thorough examination of the defendant by the court regarding defendant's wishes to withdraw a prior sanity petition, and the consequences theroef. We see no error under the facts of this case in permitting the defendant to withdraw his petition for a sanity hearing.

The defendant contends that his counsel was incompetent. Initially, three members of the bar were appointed to represent defendant. Upon defendant's inability to co-operate with counsel, counsel was permitted to withdraw and the court appointed two additional counsel with whom defendant was able to co-operate. We have examined the record carefully and cannot agree with defendant's contention that his counsel was incompetent. It is apparent that counsel presented as good a defense to the charge as the nature of the case permitted. The defense lawyers were in a difficult situation. The defendant had made several written statements admitting the shooting of Larry M. Kirk. Defense counsel presented mitigation on behalf of defendant and succeeded in enabling the defendant to escape the extreme penalty. The standard of performance laid down by this court in *People v. Morris,* 3 Ill.2d 437, for appointed lawyers was complied with in this case.

The contention of the defendant that all evidence on his behalf was not presented before the trial court is, upon examination of the record, totally without merit.

From an examination of the record in its entirety we find that the defendant was properly convicted of the crime of murder. Accordingly the judgment and sentence of the circuit court of Marion County is affirmed.

*Judgment affirmed.*