(No. 36783.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MICHAEL A. DE SIMONE, Plaintiff in Error.

*Opinion filed May 27, 1963.*

MICHAEL A. DE SIMONE, *pro se.*

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys

General, and EDWARD J. HLADIS and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER

On May 11, 1960, the defendant, Michael A. De Simone, was indicted upon a charge of murder in the criminal court of Cook County. At his arraignment the public defender was appointed to represent him, and a plea of not guilty was entered. On October 31, 1960, the defendant, acting against the advice of his appointed counsel, withdrew his plea of not guilty and entered a plea of guilty. The trial court entered judgment on the plea and sentenced him to 100 years in the penitentiary. On June 29, 1961, the defendant filed a document entitled, "Motion and Petition for a New Trial." The time within which a motion for a new trial could be filed had already expired, and the trial court treated the document as a petition in the nature of a writ of error *coram nobis,* under section 72 of the Civil Practice Act. (Ill. Rev. Stat. 1961, chap. 110, par. 72.) The State filed a motion to dismiss the petition, which was allowed, and the defendant has appealed.

The entire record that was before the trial court when the defendant was convicted, as well as the record in the proceeding under section 72, are now before this court. The State has suggested that in the interest of speedy administration of criminal justice we treat the case as though it were also here on writ of error to review the judgment of conviction, and we have decided to do so.

The principal contention of the defendant is that it was error to accept his plea of guilty without first conducting a hearing to determine his sanity. No request for such a hearing was made by the defendant or his attorney, but we have held that "When, before or during the trial, facts are brought to the attention of the court, either by suggestion of counsel or the State, or by its own observation,

which raise a *bona fide* doubt of the defendant's present sanity, a duty devolves upon the court to then cause a sanity hearing to be held as provided by law." *People* v. *Burson,* 11 Ill.2d 360, 370; see also *Brown* v. *People,* 8 Ill.2d 540; *People* v. *Maynard,* 347 Ill. 422.

After the defendant's arraignment, on motion of defendant's counsel, the court ordered that a psychiatrist of the Behavior Clinic of the criminal court examine the defendant as to his mental condition. Some months later, again on the motion of defendant's attorney, the court ordered a further psychiatric examination by two private psychiatrists. An order was subsequently entered directing payment of the fees of these psychiatrists. The record contains no report of either of these psychiatric examinations.

While the case was pending upon the defendant's plea of not guilty, the defendant's attorney moved to suppress certain statements made by the defendant on the ground "that at some time prior to the making of these statements the defendant had been declared to be an insane person in the county court of Randolph County, Illinois and that no order of restoration had thereafter been entered."

After the defendant had pleaded guilty, testimony covering the commission of the crime was put before the court by stipulation. Statements made by the defendant and a co-defendant were included. Those statements showed that the defendant was actually in the custody of a mental institution at the time the crime was committed, that he left the institution, committed the crime, and immediately returned to the institution.

In addition to these circumstances, it appeared from the defendant's *coram nobis* petition that in 1956 he had been convicted of larceny of an automobile and imprisoned in the penal institution at Pontiac. While he was there he assaulted another inmate with a piece of pipe and on another occasion attacked an officer with a knife. He was then transferred to the detention hospital at the Stateville

Branch of the penitentiary. From there he was sent to the Menard Branch and placed in the psychiatric division.

At the expiration of his sentence he was taken before the county court of Randolph County on a petition which sought his commitment as "a person in need of mental treatment." A commission of two psychiatrists appointed by the court found him in need of mental treatment and recommended that he be committed to the mental institution at Chicago State Hospital. An order of commitment which adopted the findings and recommendations of the commission was entered on December 7, 1959. Thereafter the defendant was transported to the Chicago State Hospital. He was in the custody of that mental institution when the crime here involved was committed.

We are of the opinion that the circumstances revealed by this record were sufficient to raise a *bona fide* doubt as to the defendant's sanity, and that his plea of guilty, which he stated was being made against the advice of his attorney, should not have been accepted without a sanity hearing. While we have held that the presumption of continuing lack of mental capacity that arises from an initial adjudication can be rebutted by lapse of time and inconsistent circumstances, (see, *e.g., Glenn* v. *People,* 9 Ill.2d 335, 343-4; *People* v. *Samman,* 408 Ill. 549, 554) we have been referred to no case in which a conviction has been sustained under circumstances like those that appear upon this record.

The authorities cited by the State are readily distinguishable. In *People* v. *Richeson,* 24 Ill.2d 182, the defendant had been committed to the Illinois State Hospital and had escaped shortly thereafter. More than a year and a half had elapsed between his escape and his arraignment. Moreover, in that case the judge was satisfied from a lengthy interrogation of the defendant that he understood the nature and object of the charges against him and the consequences of his plea of guilty, and was generally capable of co-operating with his counsel in the preparation of a de-

fense. In the present case there was no such questioning directed to the defendant's mental capacity. The defendant's explanation of the reasons that prompted him to plead guilty came after the plea was accepted, and it was disconnected, incoherent and in general unintelligible. When the defendant had finished his statement his counsel said: "What he is trying to tell you, I think, and I am not even too sure of it * * *."

In *People* v. *Baker,* 26 Ill.2d 484, there had been no prior adjudiciation of mental incapacity and when the court accepted the defendant's plea of guilty it did so in the light of a report of a psychiatrist that indicated that the defendant was mentally competent. Similarly, in *Withers* v. *People,* 23 Ill.2d 131, there was no history of mental incapacity prior to the trial. Rather the defendant in that case relied upon the fact that he was placed in the psychiatric division of the penitentiary when he was sent there after his conviction.

The State argues that the order of the county court of Randolph County, entered December 7, 1959, which adjudicated the defendant to be "a person in need of mental treatment" is without significance because it did not adjudicate him to be either insane or mentally ill. This argument is based upon the provision of section 5—11 of the Mental Health Code to the effect that an order entered upon a finding or verdict that any person is a person in need of mental treatment "shall not constitute an adjudication by the Court that such person is a mentally ill person or that he is incapable of managing and caring for his own estate." Ill. Rev. Stat. 1959, chap. 91½, par. 5—11.

The argument is not persuasive. The Mental Health Code deals with persons who are mentally ill, mentally deficient or in need of mental treatment, and it defines those terms. It does not define a separate category of "insane persons." In the respects here relevant the statutory defini-

tions of persons who are mentally ill and persons who are in need of mental treatment are identical. Both definitions include "any person afflicted with mental disease to such an extent that for his own welfare, or the welfare of others or of the community, he requires care, treatment, detention and training, * * *." (Ill. Rev. Stat. 1959, chap. 91½, pars. 1—8, 1—9.) The difference in the definitions lies in the fact that the condition of the mentally ill person must be such as to render him "incapable of caring for and managing his own estate", while the mental condition of a person in need of mental treatment is determined "without reference to his ability to care for and manage his own estate." For present purposes this difference is without significance.

In our opinion the facts shown were sufficient to raise a *bona fide* doubt as to the mental condition of the defendant, and to require a hearing to determine that condition before judgment was entered on his plea of guilty.

The judgment of the criminal court of Cook County is therefore reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*