People of the State of Illinois, Plaintiff-Appellee, v. Paul McElroy, Defendant-Appellant.

Gen. No. 69–220.

Second District.

July 2, 1970.

 ▌ 

Robert P. Will, Jr., Public Defender of Lake County, of Zion, and Charles F. Scott, of Waukegan, for appellant.

Jack Hoogasian, State's Attorney of Lake County, of Waukegan, and Alphonse F. Witt, Assistant State's Attorney, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Paul McElroy entered a plea of guilty to an information charging burglary. He appeals from the judgment of conviction entered on his plea and the resulting sentence of 3 to 15 years in the penitentiary.

Defendant claims that the record does not sustain a knowing plea; that the circumstances placed a duty upon the court to inquire into defendant's competence; and that the sentence is excessive.

From the record it appears that the defendant, with the assistant public defender, first appeared before the judge who arraigned him on December 27th, 1968, and after having been admonished fully, waived presentment to a grand jury and consented to the filing of an information. A plea of not guilty was entered. The public defender advised the court at this time that the defendant had a history at "several hospitals in the state." The matter was continued to give the defender the necessary time for investigation.

On February 3rd, 1969, upon defendant's motion, made before the motion judge, an order was entered for a competency hearing and two psychiatrists were appointed to examine the defendant.

On March 3rd, 1969, an order was entered reflecting that defendant had withdrawn his motion for a compe-

238

tency hearing and was withdrawing his plea of not guilty and pleading guilty. No judgment was entered on the plea, and the proceedings were continued to March 6th, 1969.

On March 6th, the defendant appeared before Judge L. Eric Carey, who had not presided over the previous court appearances of defendant. The public defender advised the court that the plea had not been accepted on the earlier appearance because defendant had a sore throat, a hernia, and chest pains.

The court then inquired of the public defender as to defendant's ability to plead and was advised that the defendant had that ability, and desired to change his plea to guilty. The court then inquired directly of the defendant at great length. He asked whether the defendant felt "sufficiently well in all regards, physically, mentally, nervously, in all directions," to enter a plea. When the defendant answered, "If you say so, yes, sir," the court pursued the matter, stating that this was a question which he wanted the defendant to answer. Defendant responded with a categorical "Yes." The court further pursued the matter, asking whether there was any question in the defendant's mind, and restated the inquiry. Defendant interrupted the court's question and the following colloquy ensued:

Mr. McElroy: "Physically able to plead guilty, yes, sir."

The Court: "And in all other directions?"

Mr. McElroy: "Mentally and emotionally I cannot say. I am not a doctor to say."

The Court: "I understand that."

Mr. McElroy: "Physically there is nothing wrong with me. At this time."

The Court: "The average citizen who appears here and is charged with an offense such as burglary, there is no doubt and he expresses no doubt that

239

he is able to make up his mind and plead guilty or not guilty, and there is no question physically, mentally, emotionally, or anything else about him. Now, you have almost raised a doubt. You said physically you feel that you are sufficiently able to enter a plea. You have left open other areas. I do not mean to indicate that I don't believe you are able, emotionally, nervously, or some other direction, but do you mean to raise a doubt along other lines about your ability to voluntarily, on your own free will and accord, make up your mind on this point?"

Mr. McElroy: "I don't follow you."

The Court: "Well, do you have any doubts about your ability as you stand here now?"

Mr. McElroy: "My mental ability?"

The Court: "Everything about you. Everything about you. Are you able to make up your mind today whether you want to plead guilty or not guilty?"

Mr. McElroy: "I want to get it over with, that's all."

The Court: "I understand. You want to get it over with. Sir, are you guilty or not guilty?"

Mr. McElroy: "I guess I'm guilty."

The Court: "You guess you are guilty. I am not trying to press you against the wall or to force you to say something. I want you to say it voluntarily. You are standing here in Court and I do not want you to be nervous about it. Before I finish, I am going to ask you again, are you doing this voluntarily of your own free will and I will ask you a few more questions, but when you say 'I guess' that is not quite good enough for me."

At this point the public defender interrupted to suggest that a plea of guilty not be entered and that the

case be set for a trial date. The defendant then stated that "I am pleading guilty."

The assistant state's attorney explained to the court that there had been a petition "for a Section 104" but that it had been withdrawn. Whereupon the court stated,

> The Court: "Well, I have seen nothing or observed nothing about Mr. McElroy that indicates that the Court has a duty itself to order a trial under Section 104."

The public defender then stated that he had a report, and the court replied, "Let's not go into it." However, the public defender then stated that both of the reports of the appointed psychiatrists were filed and concluded that the defendant was competent. Based on these opinions the public defender stated that the motion for a competency hearing had been withdrawn and defendant then expressed a wish to change his plea.

The court read the charge and defendant again stated "Plead guilty." The court then advised defendant that when he pleaded guilty he gave up the right to trial. The defendant responded that he understood he would be "tried by a judge." The court patiently explained that he would not be tried by a judge as to his guilt, and the defendant after a short colloquy answered that he understood. The court continued with the admonition as to the penalty, and received negative answers to his inquiry as to promises of leniency or threats before finally accepting the plea.

Defendant's principal argument is that the trial court should have, on his own motion, conducted a hearing on defendant's competency. He argues that if this had been done it would have appeared that defendant had twice attempted his life in the county jail prior to changing his plea, and had previously attempted his life in January of 1969. Additionally, counsel for defendant states that the defendant had tried to hang

himself subsequent to his plea of guilty and that the defendant had been in mental institutions on five different occasions.[1]

██ We cannot say that a bona fide doubt of defendant's competency which would require the court on its own motion to reinstate a hearing under section 104 (Ill Rev Stats 1967, c 38, § 104-2), was raised by this record. It is entirely clear from the record that defendant comprehended the charges against him and was able to cooperate with counsel in his defense. He displayed no lack of intelligence and was no stranger to criminal procedure. The fact that he did not agree with his counsel's suggestion that he proceed to trial on a plea of not guilty, does not suggest to us an inability to cooperate. Defendant's answers to questions propounded to him, both at the hearing on his plea and in the presentence hearing, were rational and orderly and do not suggest any lack of capacity to understand or to cooperate with counsel.

██ Defendant's first confusion as to the giving up of a "trial by a judge," does not suggest a lack of a

---

[1] Defendant testified in connection with a hearing in aggravation and mitigation and on his motion for probation that after he had been previously sentenced to the penitentiary for theft, he had been transferred from Joliet to Menard Psychiatric Division where he remained from December 3rd, 1963 to December 4th, 1964, but received no treatment; that he was in Chicago State Hospital in February or March of 1961 for 28 days; and there again in August of 1962 for 28 days; that he was at the Elgin State Hospital for 7 months in 1963, and in Kankakee for a month in 1964, receiving only medication on each occasion. It appears from the record that the attendance at these institutions followed arrests in which there were no disposition of the charges. Defendant also stated that he was voluntarily admitted to Manteno State Hospital in January of 1965 for approximately a month and nothing was done for him so he "just walked off." He stated that his diagnosis at each hospital was "paranoid and schizophrenia, suicidal." He considered that his problem was with barbiturates.

knowing waiver of his rights. When the court carefully pointed out that there would be no trial at all on the question of guilt, the defendant clearly answered to his understanding.

██ ██ If a defendant does understand the nature and object of the charges against him and can cooperate with counsel in a rational and reasonable manner, he is competent to stand trial, although upon other subjects his mind may be unsound. Withers v. The People, 23 Ill2d 131, 135, 177 NE2d 203 (1961). While a defendant may possess a sociopathic personality and suffer from psychological and social disturbances, these circumstances without more are not sufficient to raise a bona fide doubt as to his competence. The People v. Hammond, 45 Ill2d 269, 259 NE2d 44. It has been recently held that the mere referral of a defendant's case to a Behavior Clinic, cannot, in itself, be considered reason for granting an unrequested competency hearing. See The People v. Korycki, 45 Ill2d 87, 256 NE2d 798.

Here the fact that defendant withdrew his request for a competency hearing after the two appointed psychiatrists had admittedly found him able to comprehend the charges against him and to cooperate with counsel, even more strongly militates against any notion of abuse of discretion. See also The People v. Cleggett, 22 Ill2d 471, 474, 177 NE2d 187 (1961); and The People v. Baker, 26 Ill2d 484, 488, 489, 490, 187 NE2d 227 (1962).

The circumstances present in this case distinguish it from The People v. DeSimone, 28 Ill2d 72, 76, 190 NE2d 831 (1963); The People v. Baxton, 10 Ill2d 295, 298, 139 NE2d 754 (1957); and The People v. McLain, 37 Ill2d 173, 179, 226 NE2d 21 (1967), cited by the defendant in support of the proposition that the court had the duty to order a competency hearing even though no request was made by the defendant when he pleaded guilty.

In DeSimone, the defendant was in the custody of a mental institution on a judicially ordered commitment, there was no lengthy questioning of the defendant on the subject of his competency, and the answers of the defendant at his plea hearing were "disconnected, incoherent and in general, unintelligible." Likewise, in McLain, the defendant was brought immediately from mental confinement to arraignment, and no inquiry was conducted as to his capacity. The plea here was accepted after the motion for a competency hearing had been granted and voluntarily withdrawn by defendant after the psychiatric reports indicated his competency to stand trial, and the plea was understandably received within the rule of Baxton.

Boykin v. Alabama, 395 US 238 (1969) is clearly distinguishable in view of the full record here which fairly shows an understanding plea as opposed to the "silent record" found in Boykin.

█ Defendant has also requested that his sentence be reduced. Judge Harry Strouse pronounced sentence after a full hearing in which all aspects of defendant's prior record,[2] the defendant's personality problems,

―――――――

[2] Defendant was arrested as a juvenile in 1953 or 1954 for running away from home. In 1954, he was arrested for shoplifting. In 1957, he was arrested for shoplifting and was sent to the Illinois Youth Commission as a result. After serving six weeks he broke parole by running away. In February 1961, he was arrested for stealing an automobile and placed under one year's supervision. In April 1961, he was given three months at the house of correction for criminal trespass to a motor vehicle. In August 1961, he was sentenced to six months in the house of correction for criminal trespass to a building. In January 1962, he was arrested for criminal trespass to a motor vehicle. In June 1962, he was arrested for criminal trespass to a motor vehicle and again in December of 1962 or January of 1963 he was arrested for criminal trespass to a motor vehicle. In May or June of 1962, he was sentenced to the Illinois State Penitentiary for one year and a day for the offense of criminal trespass to a motor vehicle. In October of 1964, he was arrested for criminal tres-

and the many previous attempts at institutional rehabilitation, were carefully evaluated. The wide range chosen by the court between the relatively light minimum sentence of three years and the maximum sentence of fifteen years was selected within the framework of a reasoned and humane consideration of the proper balance between the protection of society and the rehabilitation potential of the defendant. The court, in effect, concluded that the parole board could best perform its function of predicting the degree of rehabilitation of defendant after the minimum sentence. So conceived, the penalty was not a departure from the fundamental law and its spirit and purpose. The People v. Smith, 14 Ill2d 95, 98, 150 NE2d 815 (1958). While defendant argues that the rehabilitation process in the penitentiary has been illusory, this is not an argument which we can at this time judicially accept. However, we join in the recommendation of the sentencing judge that the defendant be psychologically evaluated and be given all available help to support his professed desire to be rehabilitated.

The judgment below is affirmed.

Affirmed.

DAVIS, P. J. and ABRAHAMSON, J., concur.

---

pass to a motor vehicle. In May 1966, he was sentenced to one year in the Cook County jail for criminal trespass to a motor vehicle. In August 1966, he committed the offense of burglary and was sentenced to serve one to two years in the Illinois State Penitentiary.