2 Ill. App.3d 965 (1971)
275 N.E.2d 649
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
GEORGE LEE JOHNSON, Defendant-Appellant.
No. 70-171.
Illinois Appellate Court  Third District.
November 23, 1971.
*966 John L. Barton, of Defender Project, of Ottawa, for appellant.
Roland Litterst, Assistant State's Attorney, of Peoria, for the People.
Judgment affirmed.
Mr. JUSTICE DIXON delivered the opinion of the court:
Defendant George Lee Johnson has appealed from a judgment and sentence of the Circuit Court of Peoria County entered on a verdict of a jury finding defendant guilty of burglary.
On October 27, 1969 between 10:30 A.M. and 11:30 A.M. while Jack Schubert and his wife were away from their home, Mrs. Lucille Mabel Mary Pratt, the Schubert's next door neighbor, was talking to a friend on *967 the telephone. The room where the telephone was located is next to the Schubert's side door and the view from there was very good. While talking, Mrs. Pratt observed a man standing outside the side door of the Schubert home. She watched him creep into the Schubert residence. At that time she did not see his face but described him as a tall, slender negro man wearing a brown jacket and billed cap. She told her friend she would call her back and she then called the police.
The first officer on the scene, one Delbert Pickel, stopped at Mrs. Pratt's house. Officers Pantages and Knight arrived and went to the front door of the Schubert residence while Officer Pickel went to the side door. Officer Knight tried the front door and it was locked. He looked through the glass and observed the defendant carrying a white jewel case walking toward the side door. Upon seeing Officer Knight, the defendant turned and ran back through the living room. The jewel box he had been carrying was found sitting on the floor of an inside stairway by the side entrance. Defendant was arrested inside the house. He was frisked for weapons and given his Miranda warnings.
Defendant was taken to a waiting squad car where Mrs. Pratt observed the same man she had seen enter the house. Defendant was then taken to the police station where he was booked and searched. The defendant took out of his pockets two men's wrist watches. These watches were identified by Jack Schubert as his and prior to the break-in had been in a drawer in the Schubert's bedroom dresser. Defendant's car was found parked a block from the scene immediately after the occurrence.
At the trial for the offenses of burglary and theft, the defendant was positively identified as the man arrested within the house by Officers Pickel, Pantages and Knight. The defendant did not testify nor did he present any witnesses in his behalf. At the hearing on aggravation and mitigation, defendant's prior record was admitted into evidence. He was sentenced to a term of not less than three years or more than fifteen years for the offense of burglary.
Early in the trial the Mrs. Pratt, who watched the defendant break into the Schubert residence during the broad daylight, referred to the transgressor as Mr. Johnson. The defendant objected to that characterization on the ground that Mrs. Pratt did not know his name. The State felt constrained after that challenge to connect the defendant with the name George Lee Johnson. The State then called the three police officers and interrogated them as the Miranda warnings. (Required by Miranda v. Arizona, 384 U.S. 436, 16 L.Ed.2d 694.) At no time did defendant's attorney make a specific objection other than to request a time sequence (he was sustained) and to require a showing that the warnings were understood by defendant (he was sustained again). When Sgt. Robert *968 Walker, the booking officer, was called to the stand he testified that he had given the Miranda warnings and asked if the defendant understood his rights.
Defendant made no objection at that time and witness stated "as far as I can remember, Mr. Johnson said he wanted his attorney and he didn't want to talk at that time." There was no motion to strike by defendant. The defendant contends that the admission of this testimony by the police officers was prejudicial error, citing People v. Lampson (1970), 129 Ill. App.2d 72.
 1-3 An Appellate Court generally will not consider any error which counsel for accused could have called, but did not call, to the attention of the trial court when such error could have been avoided or corrected by the trial court. An exception to the general rule exists in case of material defects which are apparent on the face of the record and which clearly deprive accused of a substantial right. Supreme Court Rule 615 (Ill. Rev. Stat. 1969, ch. 110A, par. 615(a)) provides "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Rule 615(a) embraces the philosophy that a defendant is entitled to a fair criminal trial, and if prejudicial errors occur to the extent that his substantial rights are violated, then a reviewing court may consider such assignments of error even though no objection was made in the trial court.
 4 However, errors even of a constitutional nature may be regarded as harmless and not requiring reversal.
 5 Before it can be said that a federal constitutional error can be held harmless a reviewing court must be able to declare a belief that it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 17 L.Ed.2d 705.
 6 Applying the foregoing standard, we have no doubt that the error was harmless. From the evidence in this record we are able to say, beyond a reasonable doubt, that the testimony as to the Miranda warnings did not contribute to the finding of guilty.
 7 Defendant also contends that the maximum term of fifteen years was excessive and should be reduced. At the hearing on aggravation and mitigation, the State introduced records indicating a conviction in August, 1960 of the charges of burglary and theft wherein the defendant was sentenced from two to ten years which he commenced to serve on August 22, 1960, and was released in April, 1967. The wide range chosen by the court between the relatively light minimum sentence of three years and the maximum sentence of fifteen years was selected within the framework of a reasoned and humane consideration of the proper balance between the protection of society and the rehabilitation potential of the defendant. *969 The Court, in effect, concluded that the parole board could best perform its function of predicting the degree of rehabilitation of defendant after the minimum sentence. So conceived, the penalty was not a departure from the fundamental law and its spirit and purpose. People v. McElroy, 125 Ill. App.2d 237, 239.
The judgment below is affirmed.
Judgment affirmed.
ALLOY, P.J., and SCOTT, J., concur.