**U.L. WILLIAMS, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–81–0130–CR.**

Court of Appeals of Texas,
Tyler.

April 28, 1983.

William B. Portis, Jr., Quinnan H. Hodges, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

COLLEY, Justice.

Appellant was convicted of murder by a jury on his not guilty plea, and punishment was assessed by the jury at thirty-five years.

Appellant presents three grounds of error: (1) that the trial court erred in failing to conduct either a pretrial or mid-trial competency hearing; (2) that the trial court erred in submitting the case to the jury at the guilt/innocence stage because the "uncontroverted" evidence produced before the court and jury established that appellant was insane at the time of the commission of the offense; and (3) that the trial court erred in refusing to grant appellant's third amended motion for new trial on the ground that the verdict was "contrary to the law and the evidence."

At the guilt/innocence stage of the trial, the State's evidence established that on March 22, 1978, appellant shot Carl McDade once in the abdomen and once in the leg. McDade died in Ben Taub General Hospital in Houston, Texas, from the wound to his abdomen on May 6, 1978. The shooting took place outside a bar known as "Bubba's." An eyewitness, Herman Gary (who was also shot by appellant during the same incident), testified that appellant and McDade were engaged in an argument immediately before the shooting on the grounds outside Bubba's. Gary also testified that he had observed appellant earlier in the evening of March 22 before the shooting, drinking vodka and beer. Gary had known appellant for two to three years and testified that before the shooting appellant had seemed quiet and normal in demeanor; that the witness had been in the company of appellant at least every weekend during the year 1977 and less frequently thereafter; that he saw appellant five or six times in 1978 before the shooting, and the last occasion was about two months prior to the shooting; and that he had not noticed anything unusual about appellant's

conduct on the night of the offense before the shooting occurred.

Another State's witness, Gerald Anderson, testified that while he did not witness the shooting he was present at Bubba's at the time of the shooting. He was inside the building and heard four shots fired (both McDade and Gary were shot twice by appellant). He related that he went outside the building when he heard the shots and saw McDade lying in the middle of the street in front of the bar. Anderson further testified that he had known the appellant for about fifteen years but that he had not seen him for approximately twelve or thirteen years until about two weeks before the shooting. On that occasion the witness and appellant had about a "two hour visit" and conversation mainly about "old times." Anderson further testified that he did not notice anything unusual about the behavior of the appellant during such visit and that the appellant appeared to be "... the same U.L. Williams" that he had known before. Anderson stated that during his visit and conversation with the appellant, about two weeks prior to the shooting, the appellant did not act strange and that he carried on a normal conversation about their mutual experiences during their pre-teen and teenage years.

A third State's witness, Detective Vizina of the Houston Police Department, testified that he arrested appellant on May 3, 1978, transported him to the Department's Homicide office on the third floor of the Police Station in Houston, and eventually took a written confession from him after reading him his *Miranda* rights. Vizina also testified that he observed no abnormal, strange or bizarre behavior on the part of the subject during his interrogation and interview with him. Vizina further testified that during the interrogation appellant gave appropriate answers and responses to questions asked him. Houston Police Detective J.M. Roecher, who witnessed the signing of appellant's confession, testified that on such occasion he was in the company of the appellant for about five or six minutes. He noticed no unusual, bizarre or abnormal behavior on the part of appellant. Detective

L.W. Hoffmaster also witnessed the signature of the appellant to his confession. He testified that he was in the presence of the appellant for only about three or four minutes but likewise noticed no abnormal or bizarre behavior on the part of the appellant. Houston Police Detective R.L. Delony also testified for the State. He testified that on May 3, 1978, he interviewed the appellant and requested permission from him to search his apartment for the murder weapon. Delony testified that appellant signed a consent for the search of such premises after the witness examined the document. Delony testified that appellant requested the witness bring back from his apartment two bottles of medicine. The witness also stated that at the time of search the apartment was in a neat and tidy condition. The officer reported he found the requested medicine and delivered it to the jail for appellant's use. He testified on cross-examination that the appellant explained to him that he needed the medicine and informed the officer that he was on a VA disability "mental situation," that he (appellant) needed the medication, and that at all times appellant appeared to be "... lucid ... cooperative and in control." Detective Irvin McComas, a partner of Delony, testified essentially to the same facts as testified to by Delony.

Portions of appellant's written confession taken by Detective Vizina were introduced by the State without objection. Later the remaining portions of the confession were introduced by the appellant. A fair summary of the confession (State's Exhibit No. 10) is that the appellant admits he shot McDade "once" when McDade told appellant he wanted appellant's beer, grabbed appellant's arm and said "you're gonna have to whip me." Appellant stated in his confession that he pulled his arm free, drew his 22-caliber revolver and fired it one time at McDade.

Appellant's sole defense at trial was insanity. He relied on the testimony of two witnesses to establish such affirmative defense, namely, Dr. John D. Nottingham, a psychiatrist, and Eva Williams, his mother.

Dr. Nottingham testified on direct examination that the appellant was "... probably insane at the time of the alleged offense" and on cross-examination that "... he [appellant] was legally insane at the time of the offense...." Dr. Nottingham based his opinion on two examinations of appellant made on November 20, 1978, and June 6, 1979, and upon a review of appellant's psychiatric and medical history and consultation with other treating psychiatrists. In his testimony Dr. Nottingham described the dosage of anti-psychotic medication that appellant was taking by prescription as "hefty." Dr. Nottingham stated that appellant was suffering from a mental disorder or psychosis known medically as "schizophrenia chronic paranoid," which causes the patient to have a suspicious nature, feelings, fears that other persons are "out to get [him]," and that such patients usually hear "accusing voices" abusive towards the patient. It is clear from Dr. Nottingham's testimony on cross-examination that his conclusion that appellant was insane at the time of the commission of the offense was premised as well on the assumption that appellant had not been taking his prescribed anti-psychotic medication (haldol) for at least two weeks prior to the offense date. Dr. Nottingham's testimony can also be fairly construed as stating that when the appellant *was* taking his medication in the prescribed dosage he would achieve remission from his psychosis and therefore would not be "... overtly psychotic...." Dr. Nottingham candidly admitted on cross-examination that some persons suffering from the same mental disorder as the appellant can distinguish right from wrong and can conform their conduct to the requirements of the law. He further testified on cross-examination that, based on his examination of the appellant on June 6, 1979, appellant's speech was clear and his logic sound; that the appellant had no looseness of association or flatness of affect; that his emotional responses were appropriate; that his memory for recent and remote events was intact; that he was oriented as to time and did not appear to have delusional thinking; and

that based on these findings appellant was competent to stand trial. Nowhere in Dr. Nottingham's testimony does there appear even a suggestion that appellant was incompetent to stand trial on the date of the trial below.

Appellant's mother, Eva Williams, testified that appellant had been suffering from a "mental illness" since his discharge from the United States Army approximately seven years before the date of trial; that appellant had been in and out of the Veterans Administration Hospital, sometime staying in the hospital for as many as three to four weeks; that appellant did not take his medication; that he was better each time he got out of the hospital; that the medication affected him "sex-wise"; that after she became ill with a stroke appellant was able to help her; and that appellant was "smart."

Based upon our discussion of the evidence presented at the guilt/innocence stage of the trial, we first address appellant's second and third grounds of error.

█ In ground number two appellant claims that the "uncontradicted" evidence demonstrated appellant's insanity on the date of the offense, and since the State did not rebut the evidence, the case should not have been submitted to the jury. In other words, the appellant is contending that the evidence at trial shows that the appellant was insane as a matter of law. From a reading of his argument on this ground we also conclude that appellant contends that the trial court erred in overruling appellant's third amended motion for new trial under grounds set forth in paragraphs four, six and seven thereof, which in substance state that because of the failure of the State to rebut appellant's evidence of insanity at the time of the offense, a new trial should have been granted. The record shows that appellant did not file or urge a motion for instructed verdict at any stage of the trial below. In support of his second ground, appellant mistakenly pitches his argument on the federal rule regarding the burden of proof on the issue of insanity as stated in *U.S. v. Bass,* 490 F.2d 846 (5th Cir.1974); such is not the rule in Texas.

Section 8.01(a), V.T.C.A. Penal Code,[1] reads as follows:

> It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of mental disease or defect, either did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated.

Section 2.04(d) of the Penal Code expressly requires the defendant to prove any affirmative defense by a preponderance of the evidence, and further provides that the State is not required to negate the existence thereof. *Madrid v. State,* 595 S.W.2d 106 (Tex.Cr.App.1980). Additionally, the insanity defense presents to the jury for its decision a "... blend of medical, legal and social considerations." *See,* Practice Commentary to Section 8.01, Penal Code. The true purpose of the insanity defense has been admirably articulated by Judge Odom in his opinion in *Graham v. State,* 566 S.W.2d 941, 948 (Tex.Cr.App.1978): "The purpose of the insanity defense is to determine whether the accused should be held responsible for the crime, or whether his mental condition will excuse holding him responsible." (See cases cited in *Graham* at 948, 949 and 950.)

The State presented *no medical testimony* in rebuttal to Dr. Nottingham's testimony, and none was necessary. *Hernandez v. State,* 157 Tex.Cr.R. 112, 247 S.W.2d 260 (Tex.Cr.App.1952). A long-standing rule is that the jury is not bound by the conclusions of medical experts. *Graham, supra,* and authorities cited therein at 950 and 951. The jury is the exclusive judge of the facts proved and the weight to be given the testimony. Article 38.04, V.A.C.C.P.; *Madrid v. State, supra.* In exercising such authority the jury may accept or reject any or all of the testimony of a witness in the case. *Preston v. State,* 457 S.W.2d 279 (Tex.Cr.App.1970). Where a conflict exists in the testimony the jury is authorized to resolve the same as the finder of the facts. *Lombardo v. State,* 503 S.W.2d 780 (Tex.Cr.

App.1974). In our case the jury elected to reject the opinion of Dr. Nottingham that the appellant was insane at the time of the commission of the murder, and it was well within its right and authority to do so under the record before us. Ground number two is overruled.

■ Ground number three complains of the error of the trial court, in overruling appellant's third amended motion for new trial, because "... the verdict is contrary to the law and the evidence." No proper argument accompanied such ground and no specific complaints or objections are shown nor are authorities cited in connection with this ground. Appellant simply argues that the wrong result was reached at trial. While this ground and its accompanying argument fails to present anything for review, and we so hold, nevertheless our discussion of, and ruling on, ground two effectively disposes of ground three and the same is overruled.

We turn now to a consideration of appellant's first ground which claims that the trial court erred in failing to conduct either a pretrial or a mid-trial competency hearing in the case.

## PRETRIAL EVIDENCE NOT BEFORE THE JURY BUT BEFORE THE JUDGE

The transcript shows that the following information, reports, letters and proceedings were on file or were had in this cause prior to trial:

> (1) On June 1, 1978, Dr. Jose G. Garcia, a psychiatrist, reported his findings that the appellant was incompetent to stand trial;

> (2) on July 6, 1978, a competency hearing was conducted in the case and Dr. Garcia testified therein that appellant was incompetent to stand trial. The jury in its verdict so found, finding also that no reasonable probability existed that he would obtain competency in the foreseeable future; and that he was mentally ill and required hospitalization;

---

1. Hereafter Penal Code.

(3) on July 18, 1978, the appellant was committed to the Rusk State Hospital by order entered following the verdict of the jury mentioned above in No. 2;

(4) on August 22, 1978, appellant was transferred to the Austin State Hospital;

(5) on August 30, 1978, Dr. McCormick, head of the Austin State Hospital, discharged appellant and certified him to be competent to stand trial;

(6) on September 15, 1978, a joint motion was made by the State and appellant's counsel for psychiatric examination and the court entered its order for examination of appellant, both as to incompetency and insanity at the time of the offense;

(7) on September 26, 1978, Dr. Garcia made a report that appellant was not competent to stand trial;

(8) on November 20, 1978, Dr. John D. Nottingham made a report that appellant was competent to stand trial;

(9) on December 14, 1978, the State filed a motion for psychiatric examination for purpose of determining appellant's competency to stand trial;

(10) on February 12, 1979, another competency hearing was conducted in the case and Dr. Nottingham and Dr. Gilbert Lewis, a psychiatrist, both testified the appellant was incompetent. The jury made the same four findings as the prior jury had done on July 6, 1978;

(11) on February 20, 1979, the appellant again was committed to the Rusk State Hospital, by order entered in the cause following the second competency hearing;

(12) on March 27, 1979, the appellant was transferred to Austin State Hospital;

(13) on March 28, 1979, the appellant was discharged from Austin State Hospital as competent to stand trial by Dr. McCormick, head of the hospital;

(14) on April 12, 1979, a joint motion for psychiatric examination for both competency and insanity at the trial of the offense was made by the State and defendant's counsel;

(15) on June 6, 1979, Dr. Nottingham made written reports concluding that appellant was competent to stand trial but that he was insane at the time of the commission of the offense; and

(16) on June 19, 1979, Dr. Lewis made written reports that appellant was competent to stand trial but that he was insane at the time of the commission of the offense.

Appellant's counsel made no further pretrial motions for examination by medical experts as to his competency to stand trial after April 12, 1979. When the case was called for trial on July 30, 1979, appellant entered a plea of not guilty before the jury. The questions raised by appellant's first ground are both serious and difficult. Our first inquiry is, does the record demonstrate that the trial judge had, called to his attention in advance of trial, facts which would tend to support a finding of incompetency when all competing evidence of competency was disregarded? If so, this appeal must be abated, and the cause remanded for a retrospective determination (nunc pro tunc) of appellant's competency to stand trial on July 30, 1979, if feasible, if not for new trial. *Futch v. State,* 632 S.W.2d 743 (Tex. Cr.App.1982).

### INQUIRY UNDER ART. 46.02, SECTION 2(a), V.A.C.C.P.

■ Article 46.02, Section 2(a), V.A.C. C.P., has been construed by a panel of the Court of Criminal Appeals in *Sisco v. State,* 599 S.W.2d 607 (Tex.Cr.App.1980), as requiring "... that in determining after hearing held in advance of trial ... whether there is evidence to support a finding of incompetency to stand trial" the trial court must consider only evidence presented which tends to support a finding of incompetency and disregard all evidence to disprove or which is contrary to the existence of incompetency of the defendant. That is, as the court puts it, "To find whether there is some evidence, a quantity more than none or a scintilla, that rationally may lead to a conclusion [by the trier of the fact] of incompetency." This standard was fashioned in *Sisco* by Judge Clinton for testing the evidence of incompetency in advance of

trial and does not comport with the "bona fide doubt" standard adopted by the en banc court in *Johnson v. State,* 564 S.W.2d 707 (Tex.Crim.App.1978), involving mid-trial evidence under Section 2(b). The *Sisco* standard was approved by way of dicta at least by the en banc court in *Futch v. State, supra.*

So, in our review of the evidence in this case we shall first determine, in obeisance to *Sisco-Futch,* whether or not some evidence of appellant's incompetency, "more than none or a scintilla," existed requiring the trial court in advance of trial to impanel a jury to determine the issue of the competency of the appellant to stand trial on July 30, 1979, in accordance with Article 46.02, Section 4(a), V.A.C.C.P. At the outset, we observe that no pretrial motions relating to the issue of appellant's competency to stand trial on July 30, 1979, were filed or urged by appellant prior to trial.

On June 6, 1979, Dr. Nottingham, under a court order, examined appellant and found him competent and filed his report dated June 6, 1979, with the trial court. On June 19, 1979, Dr. Gilbert Lewis filed his report finding the appellant competent to stand trial also. No further evidence bearing on appellant's competency was offered, either by the State or the appellant. Appellant never again raised the question of his incompetency to stand trial either by written or oral motion of the appellant or his counsel. No further mention of the incompetency issue was made by any party until after the trial had terminated.

Both of the transcripts of the two prior competency hearings are included in the record on appeal. It is obvious that such proceedings were not offered in evidence at trial or before trial and were not before the trial judge in advance of trial. Both transcripts bear a file date of January 17, 1980. Thus we do not consider them for any purpose since they are not properly before us. *Thompson v. State,* 612 S.W.2d 925 (Tex.Cr. App.1981).

It is important to keep in mind that we are here concerned with appellant's competency to stand trial on July 30, 1979, and not at *any other time.* Under our view of the record we find no evidence was presented in advance of trial before the court tending to support a finding of appellant's incompetence to stand trial on July 30, 1979. In so finding, we conclude that the trial judge did not err in failing in advance of trial to impanel a jury to try the issue of appellant's competency to stand trial. In coming to this conclusion, we have disregarded appellant's former incompetency and his prior commitments to the State Hospitals under Article 46.02, Section 5, and all evidence presented in connection therewith because the discharges from the hospitals on the two prior occasions (August 30, 1978, and March 28, 1979) operated to set aside the findings of incompetency based on such former evidence. Article 5547–81(b) V.A.C.S.; *Ex parte Yarborough,* 607 S.W.2d 565 (Tex.Crim.App.1980).

### INQUIRY UNDER ART. 46.02, SECTION 2(b), V.A.C.C.P.

We now address the other half of appellant's ground of error one claiming that the trial court erred in failing to halt appellant's trial on the merits below and impanel a separate jury to try in mid-trial the issue of appellant's competency to stand trial on July 30, 1979.

Section 2(b) of Article 46.02 reads:
If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial.
Unlike the language of Section 2(a), Section 2(b) contains an express provision requiring the trial court to conduct a bench hearing out of the presence of the jury when during trial evidence of a defendant's incompetency from any source is called to the trial court's attention. Following such hearing, if the trial court concludes that a bona fide doubt exists as to the competency of the defendant to stand trial, then pursuant to Section 4(a) and Section 4(c) of Article 46.-02, V.A.C.C.P., the trial on the merits shall be recessed and a different jury panel im-

panelled to try the competency issue at any time before sentence is pronounced, unless the hearing is delayed until after a "not guilty" verdict is received, in which event, of course, the defendant would stand acquitted and the competency issue would become moot because no due process question would be presented. The Court of Criminal Appeals, following the delivery of the opinion of the United States Supreme Court in *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), decided *Townsend v. State,* 427 S.W.2d 55 (Tex.Cr. App.1968) and *Morales v. State,* 427 S.W.2d 51 (Tex.Cr.App.1968). *Morales* followed *Townsend* by four days, but the discussion and reasoning in *Townsend* is more comprehensive. Judge Onion, writing for the Court in *Townsend,* stated that under the then existing (1965 revision) provisions of Article 46.02, Section 2, V.A.C.C.P., the defendant in *Townsend* failed to take appropriate steps, i.e., he failed to file a written motion for mistrial and submit the issue of insanity at the time of trial at the guilt/innocence stage. The court held that such failure did not constitute a waiver of his right to a competency determination where the defendant had urged a proper and timely demand for a preliminary hearing on the competency issue which was refused. Noting that *Pate v. Robinson* did require a "separate hearing" for determination of a defendant's competency to stand trial, but "not necessarily a preliminary one," Judge Onion concluded that if during trial the trial judge becomes aware "from personal observation, or facts known to him, or from evidence presented, or by a motion of the accused or his counsel, or by affidavit, or from reasonable claim or credible source, that there is a bona fide doubt as to the accused's condition to comprehend his situation or make his defense, a duty devolves upon the trial judge to cause a sanity (competency) hearing on that issue to be held as provided by law." *Id.* at 63. The opinion then seemingly adopts the rule that the determination of the necessity for the submission of the competency hearing to the jury rests in the sound judicial discretion of the trial judge and that his decision thereon

will not be disturbed absent an abuse of discretion, citing, inter alia, *Van Dusen v. State,* 197 Kan. 718, 421 P.2d 197; *People v. DeSimone,* 28 Ill.2d 72, 190 N.E.2d 831; and *People v. Burson,* 11 Ill.2d 360, 143 N.E.2d 239. *Id.* at 63. In 1975 the Legislature rewrote Section 2 of Article 46.02 in its present form. In April 1978 the Court of Criminal Appeals, on the State's motion for rehearing, decided *Johnson v. State,* Tex.Cr. App. 564 S.W.2d 707. In *Johnson,* Judge Douglas writing for the majority, the court construed Article 46.02, Section 2(b), V.A.C. C.P., as preserving the "bona fide doubt" standard explained in *Pate v. Robinson, supra,* and *Townsend v. State, supra,* as the standard of proof to be met before a separate mid-trial competency hearing will be required. Expressed another way, *Johnson* held that *before the trial judge must impanel a jury* to try the competency issue after the trial on the merits has begun, *he must, after consideration of all the evidence bearing on a defendant's competency, have a bona fide doubt as to the competency of the defendant to stand trial.* On original submission of *Johnson,* Judge Odom wrote an opinion which reversed the trial court because of the failure of the trial court to conduct a bench hearing outside the presence of the jury to determine whether or not there was evidence to support a finding of incompetency to stand trial. Judge Odom stated that the language of Section 2(b) calling for the bench hearing is *mandatory.* Also, Judge Odom wrote, "Under the plain language of the controlling statute [Section 2(b) of Article 46.02], it is no longer necessary that the evidence be sufficient to create a reasonable doubt in the judge's mind before a hearing is required . . . ." However, Judge Odom's dissent in the case makes clear that his language above quoted refers to the standard of proof required for the "bench hearing," and not to the determination by the trial judge whether to submit the issue of competency to the *jury.* The majority and dissenting opinions in *Johnson* can be reconciled if the decision can be fairly construed as holding that the failure of the trial court to conduct a bench hearing out of the presence of the jury,

when confronted with some evidence of a defendant's incompetency to stand trial, though erroneous, *is not reversible when all of the evidence is insufficient to create a bona fide doubt as to defendant's competency to stand trial.* This interpretation seems to be supported by the decision and discussion in *Garcia v. State,* 595 S.W.2d 538 (Tex.Cr.App.1980). Also following *Johnson* are three more recent panel decisions by the Court of Criminal Appeals: *Dinn v. State,* 570 S.W.2d 910 (Tex.Cr.App.1978); *Thompson v. State,* 612 S.W.2d 925 (Tex.Cr.App. 1981); and *Hawkins v. State,* 628 S.W.2d 71 (Tex.Cr.App.1982).

On the day the trial court called the case for trial (July 30, 1979), and before the voir dire examination of the jury panel, the trial judge orally dictated an order and findings into the record to the effect that he was aware that appellant had been previously adjudged to be incompetent and had been previously committed to a mental institution; and that based on the medical reports dated June 6, 1979 (Dr. Nottingham) and June 19, 1979 (Dr. Lewis), from the Harris County Psychiatric Hospital, he found appellant competent to stand trial. The trial judge did not invite either the State or the appellant to offer any other evidence before the court prior to his pronouncement. However, at the conclusion of his statement and order he did inquire if the parties were ready to proceed and then caused a jury panel to be brought into court, upon announcements of ready by the State and appellant.

We reiterate here our previous discussion of the evidence adduced at the guilt/innocence stage of this case, and now briefly discuss the evidence at the punishment stage. Appellant and his sister, Joyce Bankston, testified for the defense at the punishment stage. Bankston's testimony cannot be construed as suggesting in any way that the appellant was incompetent to stand trial.

Appellant's testimony describes a concussion-type injury which he received in Vietnam while a member of a gun crew firing a large artillery weapon. Appellant described the injury as causing a severe blow to the side of his head, causing damage to a nerve in his ear, and producing a ringing in his head. He testified he was 100% disabled and not able to work.

His testimony demonstrates poor grammar and clearly shows that he is not a highly literate person nor a person of exceptional intelligence. However, appellant's answers to questions propounded to him, both by his attorney and the State's attorney, were responsive and appropriate. During his testimony the appellant demonstrated that he had good re-call and memory of past events; he testified also that he assisted his mother in preparation of meals, and helped in caring for her while he was living with her. We conclude that appellant's testimony does not present any evidence of his present incompetency to stand trial on the date of his testimony. Therefore we hold that no evidence tending to support a finding of incompetency was presented at trial which would require a preliminary bench hearing out of the presence of the jury to determine whether or not a bona fide doubt existed as to the appellant's competency to stand trial. We further hold in view of our conclusion just made that the trial judge did not abuse his discretion in failing to recess the trial on the merits and impanel a separate jury to try the competency issue. Appellant's first ground of error is overruled.

Finding no error the judgment of the trial court is affirmed.