Edward Daniel BONNER, III, Appellant,

v.

The STATE of Texas, Appellee.

No. 49713.

Court of Criminal Appeals of Texas.

March 26, 1975.

Rehearing Denied April 16, 1975.

Calvin A. Hartmann, Houston, for appellant.

Carol S. Vance, Dist. Atty., Phyllis Bell and Bill Camp, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

The appellant was charged by indictment with the offense of theft from the person. Upon a plea of not guilty, a trial before a jury was commenced, but subsequent to the close of evidence presented by the State the appellant withdrew his plea of not guilty. The jury was discharged and the appellant entered a plea of guilty before the court. The court assessed punishment at two (2) years, but suspended the imposition of sentence and granted the appellant probation.

Appellant contends the court erred in failing to impanel a separate jury to determine his competency to stand trial once the issue had been raised. He also urges that the court erred in accepting his guilty plea after the issue of competency had been raised, and that the court "chilled" his right to trial by coercing his guilty plea.

To put these contentions in proper perspective, a brief resume of what occurred is necessary. The testimony before the jury showed that the complaining witness, Charles T. McAllister, was in the "Port of Entry" shop in Harris County on June 18, 1973, as a customer. While looking at some merchandise, he felt his billfold "go out of my pocket." He looked around and saw the appellant holding his billfold, and he repeatedly and excitedly asked for the return of the billfold as the appellant moved away. A woman employee, Debbie Wings, screamed at the appellant and asked, "What do you think you are doing?" At this point the appellant threw the billfold back to McAllister and fled the store. The license number of the car in which he departed was taken.

Testifying in his own behalf, appellant related he entered the store to "browse around" and noticed McAllister, who he claimed smiled at him and "made an implication to me that he was a homosexual," and showed the billfold to him. He admitted he took the billfold, but shortly thereafter threw it back to McAllister, left the store and went home. He explained he was unemployed at the time, but had worked at Dow Chemical as a chlorine gas operator. He further explained he had "walked off" that job because the gas made him paranoid "and I thought everybody in the plant was trying to get me . . . ." He related that as a result he went to a psychiatrist and stayed at the Cullen Center of St. Joseph's hospital in the Psychopathic Ward for 22 days. No dates were given.

At this juncture in the trial the court removed the jury and the following occurred:

"THE COURT: You are putting me in a position right now of discharging this

jury and placing him in custody for a psychiatric examination. You may step down? See if you can get Doctor Sher on the phone? (To Clerk)

"MR. COOPER: I would like to have a writ hearing, Your Honor. Are you holding him without bond?

"THE COURT: I am holding him for Doctor Benjamin Sher, the County Psychiatrist, to come here and examine him.

(At this time a call is made to Dr. Sher, but his secretary advised that Dr. Sher was not available at the moment.)

"THE COURT: When you were on direct examination by your attorney you said that you were paranoid; what does that mean?

"DEFENDANT: 'Paranoid' is being afraid of things, just plain fear.

"THE COURT: Do you think that at the time of this incident, whether you intended to take the billfold or not, at that time did you know what you were doing?

"A. No sir, I don't think so. I was sick then.

"THE COURT: You were sick?

"DEFENDANT: Yes.

"THE COURT: And you are no longer sick now, is that what you are saying?

"A. Not at the present point of being, not as sick as I was. I went to the Psychiatric center at the Cullen Building, and I was in the Marine Corps, and I don't think I can do things like that again.

"THE COURT: What did you do with the billfold?

"DEFENDANT: Threw it back at the man.

"THE COURT: Where did you get the billfold?

"DEFENDANT: Well Judge, I thought he was a homosexual.

"THE COURT: I heard what you said. You took it from his pocket, but you didn't intend to keep it?

"DEFENDANT: No sir, and I threw it back at him.

"THE COURT: Did you know at the time that you took it from him that it was wrong?

"A. No sir, I don't think so.

"THE COURT: I will have to impanel another jury to determine if you are sane or not, and if you are found insane you will have to be committed. Do you understand that?

"DEFENDANT: Yes sir, I understand that.

(At this time there is a discussion at the bench after the prosecutor and the defense attorney approached the bench)

"THE COURT: All right, bring the Jury in, please?

(At this time the Jury is returned into the courtroom, and the following proceedings take place before the Court and Jury:)

"THE COURT: Anything else, gentlemen?

"MR. COOPER: At this time the Defense Rests, Your Honor."

Thereafter, apparently as a result of an unrecorded conversation, the court advised the appellant his attorney had informed the court that the appellant wanted to change his plea to guilty and appellant agreed this was correct. The jury was discharged, the appellant entered his guilty plea, waived trial by jury and was properly admonished by the court as to the consequences of his plea, etc., in accordance with Article 26.13, Vernon's Ann.C.C.P.

Among other things, the court determined that the appellant was pleading

guilty because he was guilty and was satisfied in his own mind of his guilt. The court further determined that the appellant had not received any other psychiatric treatment than previously mentioned, had been discharged from that treatment, and was not "now" an outpatient. The court also determined the appellant understood the proceedings involved. The court then determined that appellant's counsel was satisfied that appellant understood the nature of the proceedings, and the consequences of his guilty plea. The plea was then accepted and a written stipulation, including a judicial confession, was offered into evidence.

 It is well settled that the conviction of an accused person, while he is legally incompetent to stand trial, violates due process. Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956); Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Perryman v. State, 494 S.W.2d 542 (Tex.Cr. App.1973). Due process requires a separate hearing to determine competency to stand trial. Pate v. Robinson, supra. While *Pate* would not require a jury trial on such issue, Texas law does. Townsend v. State, 427 S.W.2d 55 (Tex.Cr.App. 1968); Cavender v. State, 515 S.W.2d 277 (Tex.Cr.App.1974).

In Noble v. State, 505 S.W.2d 543 (Tex. Cr.App.1974), this court said:

" 'Recently, in Ainsworth v. State, Tex.Cr.App., 493 S.W.2d 517 (1973), we discussed what is necessary to bring into play the due process requirement of a separate hearing:

" ' "An accused is not required to prove actual insanity or incompetency before the trial judge is required to conduct a separate hearing on the matter. If this were the rule, the separate hearing procedure would become meaningless. However, it is necessary that evidence come before the court, from some source, of sufficient force to create in the court's mind reasonable ground for the judge to doubt the competency of the accused to stand trial. Once this occurs, the court should conduct a hearing out of the presence of the jury to determine whether or not there is in fact an issue as to the competence of the accused to stand trial."

Once this separate inquiry is made out of the jury's presence, the due process requirement is met. If the trial court determines that no such issue exists, his decision will not be disturbed in the absence of abuse of discretion. However, if the issue is found to exist, then Texas law requires the court to halt the proceedings and empanel a separate jury to determine the issue uncluttered by the evidence relevant only to the question of guilt or innocence. Ainsworth v. State, supra; Vardas v. State, Tex.Cr.App., 488 S.W.2d 467; Hefley v. State, Tex. Civ.App., 480 S.W.2d 810; Townsend (sic) v. State, supra; Article 46.02, V. A.C.C.P. . . .' "

 The fact that no request or demand for a hearing was made by the accused is immaterial; where evidence of incompetency becomes manifest during trial, due process requires the trial judge on his own initiative to halt the trial and conduct a hearing.[1] Price v. State, 496 S.W.2d 103 (Tex.Cr.App.1973); Vardas v. State, 488 S.W.2d 467 (Tex.Cr.App.1973); Martin v. Estelle, 492 F.2d 1120 (5th Cir. 1974). The facts before the court need not prove incompetency before a hearing on the same

---

1. In Boss v. State, 489 S.W.2d 580 (Tex.Cr. App.1972), it was noted that the trial judge is not required to conduct a hearing on his own motion absent any significant facts being brought to his attention or absent circumstances and actions which should have indicated a need for separate determination.

is warranted; they merely need to be sufficient to create a reasonable ground in the court's mind to doubt the accused's competency. Wages v. State, 501 S.W.2d 105 (Tex.Cr.App.1973); Ainsworth v. State, supra. The test for competency is whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Reeves v. State, 516 S.W.2d 410 (Tex.Cr.App.1974); Quintanilla v. State, 508 S.W.2d 647 (Tex.Cr.App.1974); Sandlin v. State, 477 S.W.2d 870 (Tex.Cr. App.1972); Bruce v. Estelle, 483 F.2d 1031 (5th Cir. 1973).

In the instant case appellant's testimony before the jury was relevant to and apparently designed to raise the defensive issue of insanity.[2] Without dates being given as to appellant's employment and psychiatric treatment, it is difficult to see how the testimony bore on his present competency to stand trial, but the trial court obviously thought it was relevant to such issue. He removed the jury, made further inquiry as to appellant's condition, and appeared ready to afford the appellant a separate hearing before a different jury on the competency issue. It was at this point as a result of an unrecorded conference that the appellant decided to withdraw his earlier plea and enter a plea of

guilty and requested the court to accept it. As a result of this move on the appellant's part, the separate jury hearing on competency was not held. It appears to be appellant's contention that the court, despite the circumstances, should have conducted such competency hearing before a jury and that it was error to fail to do so. We cannot agree. First, it does not appear that the evidence sufficiently raised the competency issue, but, even if it did, the trial judge, despite his earlier statements after further inquiry and discussion, determined such a hearing was not necessary, and there was no objection on appellant's part. Appellant cannot, under the circumstances here presented, wait to raise the question on appeal. The first two grounds of error are overruled.

Next, appellant contends the trial court erred in accepting the guilty plea "when it previously had determined that the issue of competency to stand trial had been raised." It is apparently appellant's position that as a result of the court's earlier statements he was precluded from accepting the guilty plea. This contention is germane to the first two grounds of error.

Article 26.13, Vernon's Ann.C.C.P., clearly requires that no guilty plea shall be received by the court unless it "plainly appears" that the accused is mentally competent and it is well established that if the issue is raised the court must make inquiry as to such issue. See Ring v. State, 450

---

2. The issue of insanity at the time of the commission of an offense is a defensive one, and therefore is properly raised during the course of the trial on the merits. Faz v. State, 510 S.W.2d 922 (Tex.Cr.App.1974); Newton v. State, 509 S.W.2d 610 (Tex.Cr.App. 1974); Townsend v. State, 427 S.W.2d 55 (Tex.Cr.App.1968); Fuller v. State, 423 S.W.2d 924 (Tex.Cr.App.1968). An accused is not entitled to a separate trial on the defensive issue of insanity at the time of the commission of the offense. Nilsson v. State, 477 S.W.2d 592 (Tex.Cr.App.1972); Cross v. State, 446 S.W.2d 314 (Tex.Cr.App.1969).

It should not be confused with the issue of present insanity or competency to stand trial. Under the law of this State every person is presumed to be sane and to have sufficient judgment to be held accountable for his acts until the contrary is established; the defendant who raises insanity at the time of the commission of the offense bears the burden of proof on that issue by a preponderance of the evidence. Nilsson v. State, supra; Cross v. State, supra; Fuller v. State, supra; Forder v. State, 456 S.W.2d 378 (Tex.Cr. App.1970).

S.W.2d 85 (Tex.Cr.App.1970), and cases there cited.

In the instant case the trial court obviously considered the issue raised and made inquiry as to both appellant and his counsel concerning competency before accepting the guilty plea as earlier reflected in this opinion. We do not perceive error. The court was not barred from accepting the guilty plea because of its earlier statements under the circumstances here presented.

■ Lastly, appellant complains the trial court "chilled" his right to trial by coercing his plea of guilty. Apparently appellant has reference to trial by jury, and contends the court's action in taking him into custody, revoking his bond and ordering a psychiatric examination (as reflected by the docket sheet) coerced his guilty plea.

Appellant candidly admits that the record is silent as to what was discussed by the prosecutor, defense counsel and trial judge after the aforesaid action was taken, and the matter was not developed by a hearing on a motion for new trial. Appellant does call attention to the fact that after the unrecorded discussion the trial judge told the jurors in discharging them the appellant would enter a guilty plea and receive two years, probated.

While a trial judge should not use his authority to order a psychiatric examination under Article 46.02, § 2(f)(1), Vernon's Ann.C.C.P., to prevent a defendant from developing his defense of insanity or in coercing a guilty plea, we cannot conclude in light of the record before us, including the court's careful admonishments and inquiry on the guilty plea and the written waiver of a jury trial signed by the appellant and his counsel, that the court abused its discretion.

The contention is without merit.

The judgment is affirmed.