Ray Junior PAUL, Appellant,

v.

The STATE of Texas, Appellee.

No. 52660.

Court of Criminal Appeals of Texas.

Per Curiam Sept. 15, 1976.

Dissenting Opinion Dec. 22, 1976.

W. L. Somers, Sherman, for appellant.

Joe Max Shelton, County Atty., and Ralph Petty, Jr., Asst. County Atty., Sherman, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for murder under our former Penal Code. Punishment was assessed at ninety-nine years.

In the first ground of error appellant contends that the trial court erred in failing to halt the trial sua sponte and conduct a hearing upon the question of appellant's competence to stand trial "when it was brought to the attention of the Trial Court that Appellant had been committed to the Wichita Falls Mental Institution on two separate occasions prior to the date of the alleged offense for which he was being tried."

█ The record reflects that prior to trial, which began on July 31, 1973, the trial court, at the request of the State, ordered appellant to undergo a psychiatric examination by Dr. David T. Wells. Wells examined appellant for approximately one half hour in the county jail. His report, dated the day before trial, stated, "The prisoner was not too cooperative and refused to talk about many areas of his life however I do feel that he cooperated enough for me to have an opinion as to whether he is or is not mentally ill." Wells summarized that opinion as follows:

"I cannot make a definitive diagnosis in this case without the benefit of psycho-logical testing and further interviews with the prisoner. I would hesitate to guess his IQ without formal testing but certainly believe that his IQ is sufficient for him to understand the charges against him, for him to assist his attorneys in his defense, etc. I suspect that he is basically schizophrenic and has had schizophrenic breaks which caused his commitment to the State Hospital on two previous occasions however the disease is in fair remission at the present time and I suspect that this is the basic illness only because of his flatness of affect, his blocking in speech and his inability to abstract proverbs. Again however I feel that at the present time he is in a mental condition sufficient to know the difference between right and wrong, to know the nature and consequences of any act that he might commit, etc. His actions at the time he supposedly committed the crime sound rather peculiar so perhaps it is unfortunate that he was not examined by a psychiatrist at that time however now it would be impossible to speculate about his mental condition at a time so far in the past."

We construe these findings as inconclusive upon the question of insanity at the time of the commission of the offense. That issue was, however, developed during the trial itself and does not constitute the subject of appellant's complaint.

█ The test of legal competence to stand trial is "whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) . . . [other citations omitted]." *Bonner v. State,* Tex.Cr.App., 520 S.W.2d 901, 906.[1]

We construe Dr. Wells' findings as concluding that appellant was medically com-

---

1. Art. 46.02, Sec. 1, V.A.C.C.P., is a statutory codification of this earlier formulated due process standard.

petent to stand trial under this legal standard.

During the trial appellant called Paul Lee, County Clerk of Grayson County, to testify. Lee was shown to be the custodian of the records of mental patients in Wichita Falls. He testified that appellant had first been committed to the Wichita Falls Mental Institution on December 5, 1968, for a maximum of ninety days, apparently under the authority of Art. 5547–38(b), V.A.C.S.

■ In February, 1969, his commitment status was changed to indefinite, apparently pursuant to Art. 5547–40, V.A.C.S., and Art. 5547–52(b), V.A.C.S. The record does not reflect that he was ever adjudicated to be mentally incompetent, see Arts. 5547–51(a)(3), 5547–4(1), V.A.C.S. Even if he was, his discharge on March 13, 1969, had the effect of terminating any presumption of legal incompetency that might otherwise have attached by virtue of the December 5 commitment. Arts. 5547–81(b), 5547–83(a), V.A.C.S.

Appellant was committed to the same institution a second time on December 22, 1971, under a temporary commitment, and was officially discharged according to Lee's testimony, on April 6, 1972.

■ Appellant contends that the trial court, following Lee's testimony, erred in failing to excuse the jury at that point and to conduct an independent inquiry into appellant's mental competence.

The relevant provisions of Art. 46.02, V.A.C.C.P., in effect at the time of trial, were as follows:

"Section 1. No issue of insanity shall be tried in advance of trial on the merits, except upon written application on behalf of the accused with the consent of the state's attorney and the approval of the trial judge.

"Section 2. (a) At the trial on the merits, the trial court shall hear evidence on the issue of present insanity.

(1) if prior to the offer thereof there be filed on behalf of the defendant's written motion [sic] asking the court to hear evidence on such issue and requesting the court to declare a mistrial because of such insanity in the manner and to the extent provided for in this article; or

(2) if the defendant or his counsel otherwise asks for a decision or issue thereon, in which event such act of the defendant shall be treated and considered as if the defendant had filed such a motion for mistrial. For purposes of present insanity, the defendant shall be considered presently insane if he is presently incompetent to make a rational defense."

Acts 1967, 60th Leg., p. 1748, ch. 659, Sec. 33, eff. Aug. 28, 1967.[2]

These provisions, unlike the version of Art. 46.02 presently in effect, envisage some request by a defendant or his counsel at some time before the trial court is required to hear additional evidence. The record in the instant case contains no such request either before or during trial. Hence, no violation of the statute has been shown.

■ There remains the question, however, whether under *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), any violation of due process of law occurred by the failure of the trial court to conduct a competency hearing. In that case it was held that due process of law may in certain circumstances require that the trial court order a competency hearing even absent any request to do so. See also *Bishop v. United States,* 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956).

In the instant case, the trial court was relieved of any responsibility to hold a pretrial hearing by virtue of appellant's announcement of ready and entry of a plea without any suggestion of incompetency. *Perryman v. State,* Tex.Cr.App., 507 S.W.2d

2. Later amendments to Art. 46.02, V.A.C.C.P., enacted before the time of trial, including Acts 1969, 61st Leg., p. 1698, ch. 554, Sec. 1, eff. June 10, 1969; Acts 1969, 61st Leg., p. 2474, ch. 833, Sec. 1, eff. June 18, 1969; Acts 1971, 62nd Leg., pp. 3026, 3027, ch. 995, Secs. 1, 2, eff. Aug. 30, 1971; and Acts 1973, 63rd Leg., p. 658, ch. 275, Sec. 1, eff. June 11, 1973; added nothing to the force and effect of the quoted provisions.

541; *Zapata v. State,* Tex.Cr.App., 493 S.W.2d 801, cert. denied, 414 U.S. 1128, 94 S.Ct. 865, 38 L.Ed.2d 752 (1974); *Boss v. State,* Tex.Cr.App., 489 S.W.2d 580.

The trial court was also apprised before trial of the gist of Lee's testimony relating to appellant's prior commitments. His conclusion that the fact of discharge in addition to Dr. Wells' report was sufficient to dispel any question of present competency was not an abuse of discretion.

After Lee's testimony, appellant's sister testified that she believed him to be insane. She stated that he had once undergone brain surgery following an automobile accident and that at their father's funeral, appellant had tried to lift him out of the coffin and talk to him.

Appellant then testified on his own behalf in a reasonably coherent and lucid manner. In addition to testifying about the details of the commission of the offense, he denied that he had ever been discharged from the institution following his second commitment, but stated that he had "just walked off." This testimony contradicted that of Lee, but the trial court was not bound to believe it. Moreover, there was no showing that appellant had ever been adjudicated mentally incompetent, see Arts. 5547–51(c), 5547–83, and 5547–4(*1*), V.A.C.S. Finally, the trial court had already heard appellant's lengthy testimony and then proceeded to hear him withstand vigorous cross-examination.

▰ Neither appellant's testimony at trial nor Dr. Wells' psychiatric evaluation can be considered dispositive of his mental competency. *Pate v. Robinson,* 383 U.S. 375, 385–86, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966). However, in light of appellant's mental history which was not nearly so bizarre as that of Robinson, and all the other circumstances of the case, we conclude that the failure of the trial court to have conducted an independent inquiry into mental competency presents no reversible error. *King v. State,* Tex.Cr.App., 511 S.W.2d 32; *Jackson v. State,* Tex.Cr.App., 509 S.W.2d 570; *Quintanilla v. State,* Tex. Cr.App., 508 S.W.2d 647; *Perryman v.*

*State,* Tex.Cr.App., 507 S.W.2d 541. See also *Ainsworth v. State,* Tex.Cr.App., 493 S.W.2d 517. The first ground of error is overruled.

▰ In the second ground of error, appellant complains of error in the charge of the trial court. No objection was made at trial, however, and as appellant's counsel conceded upon oral argument before this Court, nothing is presented for review.

▰ Finally, appellant contends that trial counsel was ineffective. Many of the alleged instances of ineffective assistance are clearly speculative. It is not argued or shown, for example, that any effort to suppress appellant's oral confession would have been successful or that a transcript of the jury voir dire would have reflected reversible error.

Appellant's trial strategy was to fully admit that he had killed the deceased, which was not surprising in view of the fact that his own sister was an eye witness to the shooting. He attempted instead to prove insanity at the time of the commission of the offense, self defense, lack of malice, justifiable homicide in defense of another, and the bad reputation of the deceased in the context of the prior relationship between deceased and appellant. The trial court charged the jury upon all these matters. Trial counsel persuaded them vigorously at trial and made frequent objections to the manner in which the prosecution presented its case.

Under the circumstances, we conclude that appellant was not only given reasonably effective assistance of counsel under the test of *MacKenna v. Ellis,* 280 F.2d 592 (5th Cir. 1960), cert. denied, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961), he was given excellent assistance. See *Herring v. Estelle,* 491 F.2d 125 (5th Cir. 1974); *Ex parte Gallegos,* Tex.Cr.App., 511 S.W.2d 510. The third ground of error is overruled.

The judgment is affirmed.

ROBERTS, Judge (dissenting).

In his motion for rehearing the appellant again urges that the trial judge should have

excused the jury and conducted a separate hearing on the appellant's incompetency to stand trial. See Art. 46.02, V.A.C.C.P. The majority overrules this motion without written opinion. I believe the motion should be granted.

In his brief on rehearing appellant calls our attention to *Ex Parte Halford,* 536 S.W.2d 230 (Tex.Cr.App.1976), in which this Court held that there was sufficient evidence to raise an issue of Halford's incompetency to stand trial. This Court granted Halford habeas corpus relief on this issue, relying principally on *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), even though *Pate* was decided some three years after Halford's trial.

As appellant correctly points out, the circumstances in this case raise an even greater doubt about the appellant's competency than did those in *Halford.* This is especially true when one considers that the trial judge here had the benefit of the holding in *Pate v. Robinson* to guide him. See also *Townsend v. State,* 427 S.W.2d 55 (Tex.Cr. App.1968); *Ainsworth v. State,* 493 S.W.2d 517 (Tex.Cr.App.1973); and *Cavender v. State,* 515 S.W.2d 277 (Tex.Cr.App.1974).

The trial judge should have stopped the trial and conducted a separate competency hearing. His failure to do so was reversible error. *Ex parte Halford,* supra; *Cavender v. State,* supra.

The judgment should be reversed.