Robert JOHNSON, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 54058.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 21, 1977.

Opinion on State's Motion for
Rehearing April 26, 1978.

Joseph C. Hawthorn, Beaumont, court appointed on appeal, for appellant.

Tom Hanna, Dist. Atty., John R. DeWitt, Asst. Dist. Atty., Beaumont, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for aggravated assault upon a police officer; punishment was assessed at two years.

The sufficiency of the evidence is not challenged; therefore, only a brief version of the facts is necessary. The evidence reflects that Deputy Constable Mike Mason had an outstanding arrest warrant for one Robert Johnson, Jr. On July 1, 1975, Mason located appellant at his place of employment, identified himself as a peace officer, and informed appellant that he had a warrant for his arrest. Appellant became agitated and made an unsuccessful attempt to show Mason that he was not the person named in the warrant. Appellant refused to go with Mason in response to the warrant, so Mason attempted to handcuff him. Appellant resisted the arrest, and a five to ten minute struggle ensued during which Mason received a blow to the face and a cut on his hand. Appellant denied striking the officer and testified that he had been jumped by five police officers without just cause. The jury rejected appellant's defense.

In his brief appellant contends, "The trial court erred in failing to halt the trial on the merits and obtain a finding as to the Appellant's competency to stand trial." Citing *Bonner v. State,* Tex.Cr.App., 520 S.W.2d 901, he argues that where evidence of incompetency becomes manifest during the trial, due process requires the trial judge on his own initiative to halt the trial and conduct a hearing.

At the time of trial in June 1976 this due process requirement had been incorporated into the statutory law of this state. Article 46.02, Sec. 2(b), V.A.C.C.P., provides:

> "If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court *must* conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial." (Emphasis added.)

This language is mandatory. The hearing by the court mandated by this provision is not the incompetency hearing itself, but is for the purpose of determining whether an incompetency hearing will be held.[1]

In the instant case, during the ten months prior to trial, appellant's court-appointed counsel filed three separate motions requesting psychiatric examinations, all of which were granted by the trial court. Two psychiatrists reported that appellant was competent to stand trial, even though there were some indications of delusions and paranoia. Another psychiatrist's report indicated that he believed appellant was competent, but that he had refused to cooperate with the examinations. A clinical psychologist's report was inconclusive due to appellant's failure to cooperate. The last of these reports was submitted to the trial court approximately three weeks prior to trial. Defense counsel also filed with the court a motion for a preliminary hearing on the issue of competency to stand trial,[2] indicating that he was of the opinion that appellant was unable to assist in the preparation of his defense. The record does not reflect that this motion was acted upon by the trial court.

While these pre-trial reports indicate appellant was competent and would be evidence of that fact, the existence of evidence that an accused is competent does not dilute or remove the unambiguous language of Sec. 2(b), supra, that requires a hearing by the court if evidence of incompetency is brought to its attention during the trial. We must therefore look beyond these pre-trial reports and examine the evidence appellant contends triggered the due process requirements now found in Sec. 2(b), supra. In weighing this evidence, however, it should be kept in mind that the statutory standard that required the court's hearing is, "If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source . . . ." Under prior case law a higher standard governed:

1. Art. 46.02, Sec. 4(a), V.A.C.C.P. provides in part:

    "If the court determines that there is evidence to support a finding of incompetency to stand trial, a jury shall be impaneled to determine the defendant's competency to stand trial."

2. See, Art. 46.02, Sec. 2(a), V.A.C.C.P.

"If the evidence which comes before the Court from any source is *sufficient to create in the Judge's mind a reasonable ground to doubt* the competency of the accused to stand trial he should conduct a hearing out of the presence of the jury to determine whether or not there is in fact an issue as to the competency of the accused to stand trial." (Emphasis added.) *Quintanilla v. State,* Tex.Cr.App., 508 S.W.2d 647.

Under the plain language of the controlling statute, it is no longer necessary that the evidence be sufficient to create a reasonable doubt in the judge's mind before a hearing is required; it is sufficient to require such a hearing that any evidence of incompetency from any source is brought to the attention of the court during the trial. We turn now to the evidence presented to the court during the trial.

In the case at bar counsel had indicated his belief that appellant was incompetent prior to trial, and within the first few moments of the trial counsel told the court that he did not believe that appellant "fully realizes the consequences of what could happen to him" concerning pre-trial procedural requirements.

Appellant's brother, James Johnson, testified that appellant had had several nervous breakdowns; that his condition was "out of control" and that he had been hospitalized in two mental hospitals in California. The brother related that the arrest warrant that officer Mason served was based upon a charge he had filed because "that's the only way I can seek help for him."

When testifying in his own behalf, appellant lapsed into a rambling narrative stating that he had been "under surveillance for five years" by certain law enforcement officials; that certain documents and pieces of his private mail had been stolen from him; that there was a conspiracy among certain parties to keep him from informing the public that the "water in the city of Beaumont was drugged,"[3] and also that there was a conspiracy among the trial officials, including the trial judge and his attorney, to send him to the penitentiary unjustly. Appellant's actions and his testimony do not appear to us to be "clear and lucid."

We hold that under the standard of Art. 46.02, Sec. 2(b), supra, this evidence was sufficient to require the trial court to "conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial."

For failure to follow this mandatory statute, the judgment is reversed and the cause remanded.[4]

Before the Court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

On original submission, we reversed appellant's conviction holding that sufficient evidence existed to require the trial court on its own motion to halt the trial on the merits and conduct a hearing to determine his competency to stand trial. We now conclude that the evidence was insufficient to create reasonable grounds to doubt the present competency of the appellant.

Prior to the amendment of Article 46.02, V.A.C.C.P., we consistently held that before

---

3. During appellant's diatribe about the "drugging" of the water system, apparently based upon a belief that the water supply in that city was being intentionally polluted, the appellant exhibited a hand-drawn sketch of what he perceived to represent the water table area underlying the city of Beaumont. This document was completely irrelevant and immaterial to any issue in the case, but same was admitted into evidence at appellant's insistence.

4. It has been made known to this Court that the appellant has remained in the Jefferson County jail since the date of his arrest and that he has *discharged* this present sentence. See Article 42.03, Sections 2, 3 and 4, V.A.C.C.P. Since appellant has discharged the sentence in this case, we need not comment as to whether the case could be remanded for a *nunc pro tunc* hearing to determine petitioner's competency in a retroactive fashion, at this time. See *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, at page 909, 43 L.Ed.2d 103; *Bruce v. Estelle,* 536 F.2d 1051 (5th Cir. 1976).

a court will be required to halt proceedings on its own motion it is necessary that evidence come before it, from some source, of sufficient force to create in the judge's mind reasonable grounds to doubt a defendant's competency. *Bonner v. State,* 520 S.W.2d 901 (Tex.Cr.App.1975); *Ballard v. State,* 514 S.W.2d 267 (Tex.Cr.App.1974); *King v. State,* 511 S.W.2d 32 (Tex.Cr.App. 1974); *Quintanilla v. State,* 508 S.W.2d 647 (Tex.Cr.App.1974); *Perryman v. State,* 507 S.W.2d 541 (Tex.Cr.App.1974). Our holdings have followed the decision of the Supreme Court of the United States in *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), and have, on occasion, adopted Justice Clark's expression that the evidence must raise a "bona fide doubt" as to a defendant's competency to stand trial. *Ex parte Halford,* 536 S.W.2d 230 (Tex.Cr. App.1976); *Wilborn v. State,* 491 S.W.2d 432 (Tex.Cr.App.1973); *Townsend v. State,* 427 S.W.2d 55 (Tex.Cr.App.1968).

Article 46.02(2)(b), V.A.C.C.P., provides:

"If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial."

■ By its enactment of Article 46.02(2)(b), the Legislature did not intend to enlarge upon *Pate v. Robinson* but sought to codify its holding as well as prior Texas case law. By its use of the terms "evidence . . . from any source," Article 46.02(2)(b) merely reiterated the language of *Townsend v. State,* supra, in which we noted that a bona fide doubt in the mind of a trial judge as to a defendant's competency may stem "from personal observations, or facts known to him, or from evidence presented, or by motion of the accused or his counsel, or by affidavit or from any reasonable claim or credible source." Thus, the words "any source" as they are employed in Article 46.02(2)(b) and the decisions of this Court speak to the origin of proof, not to its probative weight.

■ That the judge may consider evidence from *any source* should not be construed to mean that just *any evidence* will require the court to halt a defendant's trial and determine whether an issue as to his competency exists. In enacting Article 46.02(2)(b), the Legislature neglected to specify the standard of proof which must be met before an interruption of trial proceedings will be required. By its omission, however, the Legislature did not intend to abrogate the "bona fide doubt" standard to which this Court has so long adhered. As we stated in *Lovell v. State,* 525 S.W.2d 511 (Tex.Cr.App.1975):

"In enacting a statute [it is presumed that] . . . a just and reasonable result is intended and a result feasible of execution is intended."

An interpretation of Article 46.02(2)(b) to mean that any evidence will be sufficient to require a halting of proceedings and a separate determination on competency would produce unreasonable results not anticipated by the Legislature. Such a construction necessitates that a judge conduct a competency hearing on the basis of even the most insubstantial and inconsequential evidence and where no reasonable grounds exist for him to doubt the present mental capacity of the accused. The burden thus thrust upon trial courts, and the potential for abuse of the statute by defendants feigning mental illness, is evident. We do not believe the Legislature intended to mandate such an interruption of a trial on the merits in response to baseless claims of incompetency but only in cases where evidence of incompetency becomes so manifest as to raise a bona fide doubt.

We stated in *Newsom v. State,* 372 S.W.2d 681 (Tex.Cr.App.1963):

"[I]n construing a statute its subject matter, reason and effect must be looked to and when a literal enforcement would lead to consequences which the Legislature could not have contemplated, the Courts are bound to presume that such consequences were not intended and adopt a construction which will promote the purpose for which the legislation was passed."

■ We conclude that the Legislature could not have contemplated the consequences attendant upon a literal interpretation of Article 46.02(2)(b). In determining what the Legislature intended, we are guided by the Code Construction Act, V.A.T.S., Article 5429b–2, Section 3.03(4), which provides for the consideration of the common law in ascertaining legislative intent. *See also Calvert v. Fort Worth National Bank,* 163 Tex. 504, 356 S.W.2d 918 (1961). The common law of this state concerning manifestations of mental incompetency at trial leads us to conclude that the Legislature intended to preserve bona fide doubt in the mind of the trial judge as the standard of proof to be met before a separate, mid-trial determination of the accused's competency will be required. Article 46.02, Section 4(a), V.A.C.C.P., provides:

"If the court determines that there is evidence to support a finding of incompetency to stand trial, a jury shall be impaneled to determine the defendant's competency to stand trial. This determination shall be made by a jury that has not been selected to determine the guilt or innocence of the defendant."

The issue remaining is whether sufficient evidence existed to create in the mind of the court reasonable grounds to doubt the competency of appellant to stand trial. The test for competency is whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Paul v. State,* 544 S.W.2d 668 (Tex.Cr.App.1976); *Bonner v. State,* supra.

■ Prior to trial, appellant underwent psychiatric and psychological evaluation on four separate occasions. Three of these examinations were ordered by the district court pursuant to the requests of appellant's appointed counsel. Contrary to assertions in appellant's brief, however, the fact that psychiatric examinations are ordered by a court does not constitute a determination that an issue as to the defendant's competency exists. *Garza v. State,* 522 S.W.2d 693 (Tex.Cr.App.1975).

The reports of two examining psychiatrists reflect that, although uncooperative at times, appellant was a well-oriented individual who suffered from no physical or emotional distress and was able to express himself in a logical and coherent fashion. While one physician noted some "questionable delusional content with no factual basis," this variance was diagnosed as temporary and was not stated to be a form of psychosis. Both doctors found that he understood the charges against him and was capable of cooperating with his attorney in the preparation of his defense. An inconclusive examination by a clinical psychologist revealed that, with the exception of appellant's uncooperative attitude, no unusual behaviors or peculiarities were manifested. He was described as "certainly articulate" and able to express himself clearly and to the point. The report of a fourth examining physician concluded that appellant did not suffer from any mental illness and was able to understand the charges against him and deal adequately with his attorney. His "rather paranoid" approach to life was noted; it was stated, however, that these paranoid tendencies did not constitute a mental illness. During the course of this final examination approximately three weeks prior to trial, appellant insisted on having a jury trial in order to establish his mental competency.

Prior to trial, appellant refused to submit an application for probation. His dialogue with the trial judge reflects that he clearly understood the ramifications of this action but that as a matter of personal preference he did not under any circumstances desire or ask for probation. There are instances when a defendant or his counsel might think that he will be acquitted, but if he asks for probation, he will be convicted and placed on probation. This has been used as a matter of strategy.

At trial, James Johnson testified that his brother had twice been treated in mental hospitals for what Johnson described as

"nervous breakdowns." This testimony, which was descriptive only of appellant's past mental condition, did not indicate that he was mentally incompetent at the time of trial. This Court has held that the fact of previous institutionalization does not require a finding of present incompetence. *Almand v. State,* 536 S.W.2d 377 (Tex.Cr. App.1976); *Bledsoe v. State,* 519 S.W.2d 646 (Tex.Cr.App.1975). See also, *Ainsworth v. State,* 493 S.W.2d 517 (Tex.Cr.App.1973).

■ Johnson further testified that appellant's condition was "out of control", but failed to describe any behavior on the part of his brother which indicated an abnormal mental state. Such testimony, concerning appellant's behavior more than nine months prior to trial, was insufficient to create a bona fide doubt as to his present mental condition, particularly when contrasted with recent psychiatric evaluations attesting to his mental competency.

Appellant's testimony in his own behalf was articulate and reflected his understanding of the charges against him. Such clear and lucid testimony on the part of a defendant has often been viewed as important in determining that he is competent to stand trial. *Zapata v. State,* 493 S.W.2d 801 (Tex.Cr.App.1973), cert. denied 414 U.S. 1128, 94 S.Ct. 865, 38 L.Ed.2d 752; *Quintanilla v. State,* supra; *Ballard v. State,* supra; *Perryman v. State,* supra.

The record reveals that appellant is an opinionated individual greatly concerned with political and social change. While testifying he was permitted to expound at some length on these concerns, including his belief that the water supply of Beaumont was being intentionally polluted and that he himself had been under the surveillance of law enforcement officials because of his efforts to establish a small newspaper. Appellant's beliefs, however mistaken or unconventional, did not reflect mental incompetence. On the contrary, he presented his views with clarity and fluency. No showing was made that his social or political convictions impeded either his ability to understand the charges against him or to consult with his attorney. The record shows that appellant bore some hostility toward his attorney; such hostility is not, however, evidence of mental incompetency. *Ballard v. State,* supra.

There was more testimony to warrant a hearing on competency in *Paul v. State,* 544 S.W.2d 668 (Tex.Cr.App.1976) than there is in this case, but this Court a year ago held that no hearing was required.

■ Having reviewed the record we find that the evidence was insufficient to create a bona fide doubt as to appellant's mental competency to stand trial. The State's motion for rehearing is granted and the judgment is now affirmed.

ODOM, Judge, dissenting.

The majority on rehearing have misread Article 46.02, V.A.C.C.P., and confused two separate and distinct provisions of that article.

Section 2(b) addresses *raising the issue of incompetency* to stand trial and provides:

"If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial."

Section 4(a), on the other hand, addresses the *incompetency issue itself* and provides in part:

"If the court determines that there is evidence to support a finding of incompetency to stand trial, a jury shall be impaneled to determine the defendant's competency to stand trial."

Obviously, less is required for a Sec. 2(b) *inquiry* than for a Sec. 4(a) *hearing.* In the case at bar the trial judge should have conducted an *inquiry.* On original submission this Court unanimously held that Sec. 2(b) was triggered by the evidence presented. The majority grossly misstate the issue in this case when it states, "[T]he Legislature intended to preserve bona fide doubt in the mind of the trial judge as the standard of proof to be met before *a separate mid-*

*trial determination of the accused's competency* will be required." (Emphasis added.) This is no slight misstatement; Sec. 4(a) is quoted in the next statement by the majority. But a Section 4(a) determination of appellant's competency is *not* the issue! The Section 2(b) *inquiry* of whether to determine appellant's competency is the issue before this Court and the issue upon which the case was reversed on original submission. The majority's confusion is manifest.

The majority also express unfounded fears of frivolous claims of incompetency. They claim the Legislature did not intend Section 2(b) inquiries "in response to baseless claims of incompetency." The whole purpose of a Section 2(b) inquiry is to determine *whether* the claims are baseless. If only well-founded claims trigger Sec. 2(b), then a Sec. 4(a) hearing will always follow, and the Sec. 2(b) inquiry would be a wasteful formality. The majority again reveal their confusion of Sec. 2(b) with Sec. 4(a), and the result is a wholly unconvincing effort at statutory construction.

I vigorously dissent.

ROBERTS and PHILLIPS, JJ., join this opinion.