Ralph Edward **WILLIAMS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 07–81–0004–CR.

Court of Appeals of Texas, Amarillo.

Nov. 22, 1982.

Rehearing Denied Dec. 20, 1982.

Brown, Harding, Fargason & Brown, Mike Brown and Kathleen W. Billingsley, Lubbock, for appellant.

John T. Montford, Criminal Dist. Atty., Jim Bob Darnell, First Asst. Dist. Atty., Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

## OPINION ON REMAND

DODSON, Justice.

Ralph Edward Williams, the appellant, was charged by a grand jury indictment with the offenses of sexual abuse of a child under § 21.10 Tex.Penal Code Ann. (Vernon 1974), and sexual abuse of a person under § 21.04 Tex.Penal Code Ann. (Vernon Supp.1981). The jury found the appellant guilty of sexual abuse of a child and assessed his punishment at five years confinement in the Texas Department of Corrections. Based on the jury's verdict, the court rendered judgment decreeing the appellant guilty of sexual abuse of a child and sentenced him to serve not less than two (2)

years nor more than five (5) years in the Texas Department of Corrections.

Appealing from the judgment, the appellant brought three grounds of error. In his first ground of error, the appellant maintained that the evidence was insufficient to prove the allegation of force contained in the indictment and that, therefore, the evidence was insufficient to support his conviction. By his second ground of error, the appellant maintains that the trial court erred in overruling his suggestion of mental retardation and request for jury trial filed pursuant to § 4(c) of article 46.02 of the Texas Code of Criminal Procedure because there is evidence to support a finding that he is incompetent to stand trial. In his last ground of error, the appellant asserts that the trial court erred by overruling his motion for sentencing pursuant to the Texas Mentally Retarded Persons Act because the commitment provisions of that act control over conflicting provisions of the Texas Penal Code and the Texas Code of Criminal Procedure.

In our initial opinion in this cause, we overruled the appellant's first ground of error. However, we sustained his second ground of error, reversed the judgment of the trial court, vacated the sentence and remanded the case to the trial court to conduct a hearing before a jury to determine whether the appellant, at the time of his trial, was competent to stand trial, in accordance with article 46.02 § 4(c), *et seq.* of the Texas Code of Criminal Procedure. *Williams v. State,* 628 S.W.2d 848, 851 (Tex.App.—Amarillo 1982, pet'n discr'y rev'w granted, 663 S.W.2d 832). By a per curiam opinion, the Court of Criminal Appeals set aside our judgment and remanded the case to this court "for reconsideration of appellant's second ground of error" and the third ground "if it becomes appropriate." *Williams v. State,* 636 S.W.2d 1 (Tex.Cr.App., 1982). On remand, we adhere to our initial disposition of appellant's first ground, however, we now overrule his second and third grounds of error, and affirm the judgment.

As we stated above, in his second ground of error, the appellant maintains that:

The trial court erred in overruling the appellant's suggestion of mental retardation and request for jury trial, filed pursuant to article 46.02, § 4(c), of the Texas Code of Criminal Procedure, because there is evidence to support a finding of appellant's incompetency to stand trial.

In his brief under this ground of error, the appellant asserts:

On November 19, 1979, after the jury verdict, but prior to the entry of judgment and sentence in this cause, the Appellant, by and through his attorneys of record, filed his SUGGESTION OF MENTAL RETARDATION AND REQUEST FOR JURY TRIAL. *Although mistitled, and inartfully worded, this written motion had the legal effect of raising the issue of the Appellant's incompetency to stand trial.* There is evidence in this record to support a finding of incompetency to stand trial, and the Trial Court was under the *mandatory duty* to impanel a jury to determine the Appellant's competency. In overruling the Appellant's SUGGESTION OF MENTAL RETARDATION AND REQUEST FOR JURY TRIAL, in the face of evidence of the Appellant's incompetency to stand trial, the Trial Court violated the mandatory provisions of Article 46.02, § 4(c) of the Texas Code of Criminal Procedure, and therefore erred. (emphasis added).

In this court, the State did not challenge the sufficiency of the appellant's motion to raise the competency to stand trial issue. In its brief, the State characterized the appellant's contention as follows: "The gravamen of the Appellant's Point Two is that at the post-verdict stage when he filed the Suggestion of Mental Retardation and Request for Jury Trial the Trial Court was *required* to hold a jury hearing to determine the Appellant's competency since there was at least a scintilla of evidence to support a conclusion of incompetency." Likewise, in its Petition for Discretionary Review, the State did not challenge the sufficiency of appellant's motion to raise

the competency to stand trial issue. However, the record reveals that the State first challenged the sufficiency of the appellant's motion in its Motion for Rehearing in the Court of Criminal Appeals.

Responding to the State's motion, the Court stated:

We are of the view that the Court of Appeals treated the motion filed in this case as one pursuant to Article 46.02, Sec. 4(c), rather than as one pursuant to Article 46.02, Sec. 6(c)(1), V.A.C.C.P. It therefore appears that the true issue in this case is whether the motion filed under Article 46.02, Sec. 6(c) may be treated as a motion filed under the provisions of Article 46.02, Sec. 4(c). This is an issue which has never been addressed by the Court of Appeals.

Accordingly, the Court of Criminal Appeals remanded the action to this court, and directed us to address the above stated issue and to reconsider the appellant's second ground of error.

Under article 46.02 of the Texas Code of Criminal Procedure, the accused's incompetency to stand trial may be raised as follows:

Sec. 2. (a) The issue of the defendant's incompetency to stand trial shall be determined in advance of the trial on the merits if the court determines there is evidence to support a finding of incompetency to stand trial on its own motion or on written motion by the defendant or his counsel filed prior to the date set for trial on the merits asserting that the defendant is incompetent to stand trial.

(b) If during the trial evidence of the defendant's incompetency is brought to the attention of the court *from any source*, the court *must* conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial. (emphasis added).

Section 2(a) provides for a pre-trial determination of the incompetency to stand trial issue, and section 2(b) provides for a "during the trial" determination.

Section 4(c) of article 46.02 directly refers to section 2(b) of article 46.02. Section 4(c) provides:

(c) *If the issue of incompetency to stand trial is raised other than by written motion in advance of trial pursuant to Subsection (a) of Section 2 of this article* and the court determines that there is evidence to support a finding of incompetency to stand trial, the court shall set the issue for determination at any time prior to the sentencing of the defendant. If the competency hearing is delayed until after a verdict on the guilt or innocence of the defendant is returned, the competency hearing shall be held as soon thereafter as reasonably possible, but a competency hearing may be held only if the verdict in the trial on the merits is "guilty." If the defendant is found incompetent to stand trial after the beginning of the trial on the merits, the court shall declare a mistrial in the trial on the merits. A subsequent trial and conviction of the defendant for the same offense is not barred and jeopardy does not attach by reason of a mistrial under this section.

When construing section 2(b) in *Townsend v. State*, 427 S.W.2d 55, 63 (Tex.Cr. App.1968), the court stated:

The *manner* in which the necessity for an inquiry concerning an accused's present insanity or competency is raised by the defense before or during trial *is not of much importance. If the trial judge learns* from personal observations, or facts known to him, or from evidence presented, or by motion of the accused or his counsel, or by affidavit, or from any reasonable claim or credible source *that there is a bona fide doubt as to the accused's condition* to comprehend his situation or make his defense, *a duty devolves upon the trial judge to cause a sanity hearing on that issue to be held as provided by law.* (emphasis added; footnote omitted).

In his motion entitled Suggestion of Mental Retardation and Request for Jury Trial, the appellant requested the court to impan-

el a jury to determine whether he is a mentally retarded person, pursuant to section 6(c)(1) of article 46.02 of the Texas Code of Criminal Procedure (Vernon 1979), and that upon a jury's determination that he is mentally retarded, he further requested the court to commit him to a mental retardation facility of the Texas Department of Mental Health and Mental Retardation. The motion was presented at the penalty phase of the trial. At that phase, the record shows that the State announced ready and the appellant announced as follows:

THE COURT: All right. And what says the Defendant?

MR. MIKE BROWN: Your Honor, the Defendant is not ready to proceed. We have filed with the Court a motion under Section 46.02 Section 6(c)(1) to have the Court arrange for a diagnostic examination of the Defendant by a facility of the Texas Department of Mental Health and Mental Retardation for the purpose of jury trial under Article 46.02 to determine whether he is a mentally retarded person and should be committed under that provision of the act, and we're not ready to proceed.

THE COURT: All right. Do you have any evidence you care to put on your motion?

MR. MIKE BROWN: No, Your Honor, it's all based on the law. We would ask the Court to take into consideration the prior testimony of Dr. Richard Wall that on four of the sub-tests within the Weschler Adult Intelligence Scale the Defendant achieved a score that was at least two standard deviations below the mean for the group—his age group on the tests that he took. That is the definition of mental retardation under the act and for that reason we in good faith believe the Defendant is, in fact, mentally retarded, and for that reason and that it—that testimony brings into play the mandatory provisions of Article 46.02.

THE COURT: All right. The Court remembers the testimony of Dr. Richard Wall, remembers the testimony of Dr. Preston Shaw, both testifying that his combined mental capacity is in the dull normal range above the mental retardation level and will overrule your motion. We'll proceed.

■ Even though appellant designated his motion as one filed pursuant to section 6(c)(1) of article 46.02, we conclude that the motion, and the evidence reoffered in support of the motion, present sufficient "facts and circumstances" to direct the trial court's attention to its duty to ascertain whether those facts and circumstances created a reasonable (*i.e.*, bona fide) doubt as to appellant's competency to stand trial, and if deemed necessary, conduct a jury hearing as prescribed by section 4(c) of article 46.02. *Townsend v. State*, 427 S.W.2d 55, 63 (Tex.Cr.App.1968). In this regard, the record shows that by overruling the appellant's motion, the trial court impliedly determined that the facts and circumstances did not create a bona fide doubt as to appellant's competency to stand trial. We now agree with that determination.

As stated in his brief and relying on *Sisco v. State*, 599 S.W.2d 607 (Tex.Cr.App. 1980), the thrust of the appellant's second ground of error is that the trial court erroneously refused to grant him a jury hearing to determine whether he was competent to stand trial, as prescribed by section 4(c) of article 46.02, because there was some probative evidence to support that finding.[1] In determining that issue, we are governed by established principles of law.

■ When the accused's competency to stand trial is presented at the pre-trial phase of the proceedings as provided under section 2(a) of article 46.02, and there is any evidence of probative force to prove the proposition asserted, the trial court is required to impanel a jury to determine the accused's competency to stand trial as pre-

---

1. In this connection, we point out that the appellant does not claim by the ground of error or otherwise that the trial court should have granted him a jury determination under section 6(c)(1) of article 46.02, and we do not consider that matter properly before us.

scribed in section 4(a) of article 46.02. *See Sisco,* 599 S.W.2d at 609. If, however, the accused's competency to stand trial is presented at the "during trial" phase of the case, and the "facts or circumstances" are sufficient to create a bona fide doubt as to the competency of the accused to stand trial, the trial court is required to impanel a jury to determine the accused's competency to stand trial as prescribed in sections 4(a) and 4(c), *et seq.,* of article 46.02. *See Johnson v. State,* 564 S.W.2d 707 (Tex.Cr.App. 1978), and *Townsend,* 427 S.W.2d at 63.

■ In determining whether the accused's competency to stand trial is presented at the "pre-trial" or "during the trial" phase of the proceeding under our bifurcated trial system, the "during the trial" phase begins when the jury for the guilt-innocence phase is selected, *Townsend,* 427 S.W.2d at 64, and ends when the accused is either acquitted at the guilt-innocence phase or sentenced (after the conviction and punishment determinations). In this connection, the record shows that appellant was indicted on 10 May 1979. On 27 July 1979, the appellant filed a "Notice of Intent to Raise Insanity Defense." On its own motion, the trial court ordered a psychiatric examination to determine the appellant's competency to stand trial and his sanity at the time of the alleged offense. In separate reports dated 7 September 1979, the examining psychiatrist concluded that the appellant was competent to stand trial and that he (the appellant) was "legally sane" at the time of the alleged offense.

The appellant did not request, and the trial court did not order, a pre-trial jury determination on the appellant's competency to stand trial. On 1 October 1979, the appellant filed an election to have the trial judge assess his punishment in the event of a verdict of guilty. On the 1st, 2nd and 3rd days of October, 1979, the guilt-innocence phase of the case was tried to a jury. On 3 October 1979, the jury found the appellant guilty as charged in the indictment. On that same day the court ordered a pre-sen-tence report from the adult probation office.

On 19 November 1979, the court called for hearing the penalty phase of the case. The State announced ready. The appellant presented his motion entitled Suggestion of Mental Retardation and Request for Jury Trial. After the court overruled the motion, the appellant requested the court to grant him probation and proceeded to present three witnesses in support of the probation application. After hearing the witnesses, a statement by appellant's counsel concerning various efforts to get the Lubbock Regional Mental Health and Mental Retardation Services to determine whether the appellant was mentally retarded, and the appellant's Motion for Sentencing Pursuant to the Texas Mentally Retarded Persons Act of 1977, the court overruled the motion and proceeded to pronounce judgment on the appellant. The record shows that the court sentenced the appellant on 3 December 1979.

■ In the present case, we conclude that appellant's competency to stand trial question was presented "during the trial" since the motion was presented at the penalty phase of the trial and the supporting evidence was introduced at the guilt-innocence phase of the trial and reoffered at the penalty phase. In our original opinion, we erroneously concluded that in ascertaining whether the trial court should have impaneled a jury to determine the appellant's competency to stand trial the "any probative evidence" standard pronounced by the court in *Sisco,* 599 S.W.2d at 612–13, was applicable to the present case. After further consideration, we are persuaded that, as an intermediate appellate court, we are not at liberty to extend the any probative evidence standard applicable to pre-trial determinations prescribed by section 2(a) of article 46.02 to the "during the trial" (*i.e.,* mid-trial) determination prescribed by section 2(b) of article 46.02. The Court of Criminal Appeals has consistently applied the bona fide doubt standard stated in *Johnson,* 564 S.W.2d at 707, and its progeny to "during the trial" determinations.

Given this posture of the case, the issue remaining is whether the evidence (*i.e.*, the facts and circumstances presented) is sufficient to create in the mind of the court reasonable grounds to doubt the competency of appellant to stand trial. The test for competency is whether the accused had sufficient present ability at the time of the trial to consult with his lawyer with a reasonable degree of rational understanding and, whether he had a rational as well as factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), and *Johnson*, 564 S.W.2d at 711. In the present case, the evidence shows, at best, that the appellant is in the dull-normal range above the mental retardation level. Although there is some evidence by which the issue of competency to stand trial could have been raised in advance of the trial, we conclude that the evidence is insufficient to create in the mind of the court reasonable grounds to doubt the appellant's competency to stand trial. The appellant's second ground of error is overruled.

In remanding the cause, the Court of Criminal Appeals further stated that we should consider the appellant's third ground of error "if it becomes appropriate." Our overruling of the second ground necessitates a determination of appellant's third ground. By that ground, appellant maintains that the trial court erred in overruling his motion, alternatively presented in the event his application for probation was not granted, for sentencing pursuant to the Texas Mentally Retarded Persons Act of 1977, Texas Revised Civil Statutes Annotated art. 5547–300 (Vernon Supp. 1982),[2] "because commitment provisions under the Act control over conflicting provisions of the Texas Penal Act."

However, in resolving the third ground of error, it is unnecessary that we determine the asserted paramountcy of the commitment provisions of the Act over those of the Penal Code. Although neither the Act nor the Code speaks to the question whether the commitment provisions of one preempts, supercedes, or alters the commitment provisions of the others, even assuming that, without pausing to decide whether, the commitment provisions of the Act are paramount to those of the Code, appellant has not shown an entitlement to invoke the Act's provisions.

Appellant's sentencing motion was presented after his guilt had been determined by the jury and just before the evidence on punishment was heard by the court alone. The basis for the motion was that appellant is a mentally retarded person eligible for, and entitled to, the rights afforded by the 1977 Act, as shown by the evidence adduced during the guilt-innocence phase of the bifurcated trial. We do not view the evidence as having established appellant's mental retardation required by the Act for commitment.

The Act mandates that no person shall be committed to a Texas Department of Mental Health and Mental Retardation facility unless, first, "the person is mentally retarded." Section 37(b)(1). In the Act, a "mentally retarded person" is defined as "a person determined by a comprehensive diagnosis and evaluation to be of subaverage general intellectual functioning with deficits in adaptive behavior." Section 3(7).

The evidence upon which the motion is based was constituted, in part, by comparatively recent comprehensive diagnoses and evaluations of appellant. It does not profit to extract the relevant evidence; it suffices to state at this point that the court found from the evidence, which included opinions of medical experts who did not find appellant to be subaverage in general intelligence for his age group, that appellant was not mentally retarded. That finding has not been challenged per se and, after reviewing all of the evidence, we must honor the court's finding.

**2.** References hereinafter made to sections are to sections of the Texas Mentally Retarded Persons Act of 1977.

Accordingly, appellant has not established his status as a mentally retarded person eligible to come within the provisions of the Texas Mentally Retarded Persons Act of 1977. His third ground of error is overruled.

In summary, we overrule the appellant's second and third grounds of error and adhere to our initial disposition overruling the first ground of error.

The judgment is affirmed.

## ON REHEARING

REYNOLDS, Chief Justice.

In his motion for rehearing, appellant, asserting that the record reflects he is a mentally retarded person who comes within the protection of the Texas Mentally Retarded Persons Act, complains that we erroneously concluded he is not a mentally retarded person in overruling his third ground of error. The complaint centers around our refusal to disturb the trial court's finding from the evidence that appellant was not mentally retarded because, as we wrote, the evidence did not establish appellant's mental retardation required by the Act for commitment.

Specifically, appellant complains that we failed to give full consideration to the complete definition of a mentally retarded person and to an accurate account of the evidence, particularly disputing our statement that the evidence "included opinions of medical experts who did not find appellant to be subaverage in general intelligence for his age group." In this regard, appellant argues that since Section 3(6)(b) of the Act provides that "subaverage general intellectual functioning," which we quoted in the definition of a mentally retarded person, "refers to measured intelligence on standardized psychometric instruments of two or more standard deviations below the age-group mean for the tests used," and since appellant scored at least two or more standard deviations below his age-group on several of the verbal subtests of the Wechsler Adult Intelligence Scale, we erroneously

concluded he was not a mentally retarded person.

In spite of appellant's allegations, we gave full credit to the statutory definitions and to the evidence in reaching our decision. The evidence was furnished, in the main, by Dr. Wall a clinical psychologist, and by Dr. Shaw, a practicing psychiatrist, the two evidential sources depended upon by appellant to evidence his mental retardation.

Doctor Wall tested appellant by a Wechsler Adult Intelligence Scale, which, he explained, is "an intelligence test, but it's a particular kind of intelligence test where different areas of intellectual functioning are measured." The Wechsler test is composed of two subdivisions: performance and verbal, each of which has subparts. The doctor testified that a standard deviation for the Wechsler test is 15 IQ points below 100, and two standard deviations below the mean would be 30 points from 100, or 70. This test was, so far as the record reveals, the only standard psychometric instrument used recently to measure appellant's intelligence in order to arrive at an evaluation of his general intellectual functioning.

By Dr. Wall's testing, appellant did score two standard deviations below the norm on four of the subtests comprising the verbal subdivision; but, appellant's overall score on all of the subtests of the verbal subdivision amounted to a 72 IQ score which, together with his 95 IQ score on the performance subdivision, computed to an average IQ of 81 on the Weschsler Adult Intelligence Scale. Thus, appellant's intelligence, measured by this standardized psychometric instrument and not merely by some isolated subparts thereof, did not mark him to be of subaverage general intellectual functioning for his age group. Indeed, the result was confirmed by Dr. Wall's testimony that appellant's "average or full scale IQ of 81 does rule out any legal definition of retardation."

Doctor Wall's report was available to Dr. Shaw when he conducted a personal interview with appellant. When asked about

Dr. Wall's scoring of appellant's IQ tests, Dr. Shaw stated that although the Wechsler sometimes is not a valid test of IQ, he would not disagree with what Dr. Wall said in his report. He further testified that based on the data available to him and his interview, he had no doubt that appellant was not of superior intelligence, but probably was dull normal or borderline, which "is not considered by most authorities to be a true mental retardation." Although Dr. Shaw did not report the employment of a standardized psychometric instrument to measure appellant's intelligence, he did report that from his interview, "I got no impression of a substantial impairment of intelligence to any degree that would prevent the patient, if he were the actor, from being aware of what he was doing or that it was wrong."

It was in the light of this evidence that we declined to disturb the trial court's finding "from the evidence, which included opinions of medical experts who did not find appellant to be subaverage in general intelligence for his age group, that appellant was not mentally retarded." And it is in the light of this evidence that we adhere to our prior writing. Given the court's finding, and the absence of the establishment of appellant's mental retardation required by the Act for commitment, we held, without reaching the question whether the Act's commitment provisions were available to appellant in this cause, that the trial court did not err in overruling the motion for sentencing pursuant to the Texas Mental Retarded Persons Act. The court's ruling was the only question before us under appellant's third ground of error.

Still, appellant submits that we now have a different view of the evidence than we did when we wrote on original submission that

> On the other four subtests, which measure judgment, reasoning ability, attention and concentration, the appellant scored more than two standard deviations below the norm, which is an indication of mental retardation.

628 S.W.2d at 851. We see no variance. That language was part of the discussion on the question of appellant's competency to stand trial, not on the question of his entitlement to be committed under the Texas Mentally Retarded Persons Act. As previously discussed, the subtests were but a part of the measurement of appellant's intelligence which, in Dr. Wall's words, "does rule out any legal definition of retardation."

The other grounds advanced in appellant's motion for rehearing have been duly considered. We detect nothing therein to require further writing or a different disposition of the appeal on remand.

The motion for rehearing is overruled.